STURDEVANT BROTHERS & COMPANY ET AL. V. FARMERS & MERCHANTS BANK OF RUSHVILLE ET AL.*

FILED JUNE 3, 1903. No. 10,060.

1. **Corporation: POWERS.** The power of a corporation to make valid contracts is measured by its charter; and the scope of the authority of its officers and agents acting for it is limited, and a person dealing with such corporation is chargeable with notice of such limitations.

2. **Bank: UNDERTAKING.** Where the cashier of a banking corporation has attempted to obligate the bank as a surety on a replevin undertaking, in an action between third parties in a controversy over the right of possession of the property replevied, and there is nothing in the record other than the act of executing the undertaking from which it may be inferred that the corporation was interested in the subject matter of the controversy, or that the undertaking was executed with a view to furthering the interests and business of the corporation for which it was created, the only presumption fairly arising from such a state of facts is that the corporation has no interest in the controversy, and attempted to obligate itself solely as surety for accommodation of the plaintiff in the replevin action.

3. ———: ———. A banking corporation organized to do a business the nature of which "shall be banking in all its branches including the buying and selling of United States bonds and municipal and other securities, the loaning of money on personal and collateral security and also on real estate security on regular banking time, the buying and selling of bills of exchange, promissory

---

* Rehearing of case reported in 62 Neb. 472.

notes, mortgages, tax certificates, tax titles and all other business usually transacted by a bank or banker," not being authorized or empowered to pledge its credit as a matter of accommodation by executing undertakings in judicial proceedings, a person dealing with such corporation is not warranted in indulging in the presumption that the cashier of the bank is authorized to obligate the corporation as surety on a replevin undertaking in an action between third parties, merely because under some possible circumstances, the corporation would be empowered to execute such undertaking in the furtherance of its own interests and in the accomplishment of the objects, the power to perform which was granted by its charter of incorporation.

4. Cashier: SCOPE OF AUTHORITY. The signing of such an undertaking as surety thereon by the cashier, acting for the corporation, in an action between third parties in which the bank to all outward appearances has no interest, is not an act within the apparent scope of the authority of the cashier in the performance of his duties as such officer.

5. ———: ———. The execution by the cashier of a banking corporation, on behalf of his principal, of a replevin undertaking as surety, in an action between third parties, although it may not be illegal under any and all circumstances, is so much out of and beyond the general scope of the business of such corporation and the authority of the cashier, as to require those dealing with the corporation and accepting and acquiescing in such undertaking as sufficient under the law, to see to it that the bank was empowered and the cashier authorized to execute such an undertaking.

6. Judgment Reaffirmed. The judgment heretofore rendered in this cause, *Sturdevant Bros. & Co. v. Farmers & Merchants Bank of Rushville,* 62 Neb. 472, adhered to.

ERROR to the district court for Douglas county: WILL-IAM W. KEYSOR, DISTRICT JUDGE. *Judgment of affirmance adhered to.*

*W. W. Morsman, Michael F. Harrington, Will H. Thompson* and *James M. Kerr,* for plaintiffs in error.

*William V. Allen, H. C. Brome* and *Willis E. Reed,* contra.

HOLCOMB, J.

In this action a rehearing has been allowed, to the end that further investigation and consideration might be

had regarding the question of *ultra vires,* which is relied
on by the defendant, a banking corporation, as a complete
defense to the cause of action pleaded in the plaintiffs'
petition.   The subject was discussed at some length in
the former opinion which will be found reported in 62
Neb. 472, under the same title here given.   The former
opinion expresses our views on the several propositions
therein discussed and no useful purpose will be subserved
by a reiteration of what is said by the commissioner who
prepared the same.   We purpose here to confine our fur-
ther discussion to but one phase of the controversy, which
has been earnestly urged upon our attention in the brief
filed in support of the motion for a rehearing, also in the
briefs of counsel filed subsequent to the allowance of the
motion and discussed in the oral arguments made at the
time of the second submission.   The substance of the
plaintiffs' contention is that the execution of the replevin
undertaking by the defendant bank, through its cashier,
is the contract obligation of a corporation which is not
*ultra vires* under all circumstances, but only so because
of facts peculiar to the particular case; that the plaintiffs
having relied on the legality and sufficiency of the under-
taking, and the property having been seized on the writ
of replevin and delivered to the adverse party upon the
execution of such undertaking, and the plaintiffs' position
having been changed to their disadvantage in ignorance
of facts which would make the transaction *ultra vires* as
to the defendant bank, it can not be heard to assert the
want of authority of its cashier to execute the replevin
undertaking, when suit is brought for a breach of its con-
ditions.   It is said, the court has heretofore treated the
obligations of the defendant bank as one that it could not
enter into under any circumstances, and that every person
was at his peril bound to take notice of the lack of author-
ity and power of the bank to make such a contract.   It is
insisted that the contract obligation was not on its face
*ultra vires* under all circumstances, that is, it was not
prohibited by law or the charter of incorporation, nor

was it immoral or contrary to public policy and that the
plaintiffs not having any notice that it was executed as an
accommodation could rightfully presume that the con-
tract was entered into as being within the authority and
power of the bank, in the furtherance of its aims and
business as a banking corporation.  It is contended by
counsel for the plaintiffs and, as we understand, practi-
cally conceded by defendants' counsel that under certain
circumstances such an undertaking might have been ex-
ecuted by the bank and be perfectly valid.  For the pur-
poses of the case, therefore, we will assume that the de-
fendant bank might, under particular circumstances and
because of the existence of certain facts, execute a replevin
undertaking as surety and be bound thereby, as it might
be on any other contract coming indisputably within the
scope of its charter powers and the actual authority of its
officers and agents to make.  A banking corporation, it
would seem, is empowered to do any act or make any
contract, even though under usual and ordinary circum-
stances such transaction is beyond the scope of its charter
powers, if in the particular case the act was engaged in or
contract entered into in furtherance of the business of
the corporation or to protect it in its property rights or
maintain the integrity of the corporate entity.  A bank
could doubtless buy real estate on which to conduct a
banking business and yet not be authorized to enter into
contracts for the buying and selling of real estate gen-
erally as speculative ventures.  If, in the case at bar, the
defendant bank held a note against the plaintiff in the
replevin action and a mortage on the goods replevied
securing the note, it would scarcely be doubted that it
might not, for the purpose of collecting what was due it
and thus protect its assets, execute as surety the replevin
undertaking which the plaintiff in the replevin action was
by statute required to give before regaining possession of
the property.

Assuming then as we shall do, that a contract so
entered into would not in all cases and under all circum-

stances be beyond the power of the corporation to make, how should the rights of the parties to this litigation be measured and determined?

The defendant is a banking corporation organized to do a business the nature of which, according to the terms of its charter, "shall be banking in all its branches including the buying and selling of United States bonds and municipal and other securities, the loaning of money on personal and collateral security and also on real estate security on regular banking time, the buying and selling of bills of exchange, promissory notes, mortgages, tax certificates, tax titles and all other business usually transacted by a bank or banker." The defendant corporation was, at the time of the transactions out of which the present litigation grows, engaged in the prosecution of a banking business such as is ordinarily conducted in the smaller towns of the state. It possessed a limited capital stock, scarcely more than the amount for which it was obligated by the undertaking in replevin, if valid, executed by its cashier for the benefit of the defendants in the replevin action. The power of the corporation to make valid contracts is measured by its charter, and the scope of the authority of its cashier, like other officers and agents of a corporation, was limited and of these limitations the plaintiffs and all the world were bound to take notice. In the court of appeals of New York, the rule is thus stated:

"Every one knows that corporations are artificial creations existing by virtue of law, and organized for purposes defined in their charters; and he who deals with one of them is chargeable with notice of the purpose for which it was formed; and when he deals with agents or officers of one of them, he is bound to know their powers and the extent of their authority. Corporations, like natural persons, are bound only by the acts and contracts of their agents done and made within the scope of their authority." *Alexander v. Cauldwell*, 83 N. Y. 480. Again:

"A person dealing with a corporation is chargeable with

notice of its powers and the purposes for which it is formed, and when dealing with its agents or officers is bound to know the extent of their power and authority. A corporation necessarily carries its charter wherever it goes, for that is the law of its existence." *Jemison v. Citizens Savings Bank,* 122 N. Y. 140. See also *State v. Atchison & N. R. Co.,* 24 Neb. 143; *McCormick v. Market Bank,* 165 U. S. 538, 41 L. ed. 817; *Pearce v. Madison & I. R. Co.,* 62 U. S. 441, 16 L. ed. 184.

In the former opinion, the liability of the defendant was considered and determined from the standpoint of its being a surety on the replevin undertaking as an accommodation to the plaintiff therein and that it was not otherwise interested in the litigation or the subject matter of the controversy. This position is challenged on the ground that the record does not warrant the inference that the bank executed the undertaking merely as an accommodation. For aught that appears in the record, says counsel, the bank was seeking to get the possession of this property for Ross, the plaintiff in the replevin action, in order that he might convert the property into money for the benefit of and pay the same over to the bank. With all due deference to plaintiffs' counsel, we are constrained to the view that the record warrants the inference that the undertaking was, so far as the defendant bank is concerned, an accommodation entered into by it only for the purpose and with the end in view of meeting the requirement of the statute, which provides that property seized on a writ of replevin shall not be delivered to the plaintiff until an undertaking by one or more sufficient sureties has been executed conditioned as required by law. Section 186 of the code. The pleadings in the case at bar, on the part of the plaintiffs, as well as the evidence in the record, all tend to support the inference that the bank had no actual interest in the property nor in its final disposition. We may fairly assume that if, in fact, such interest existed, the plaintiffs would have sought to establish such fact in order to more certainly show a right of recovery.

18

In the presentation of their case in this court, the plaintiffs have relied largely on the fact that an indemnity bond was exacted by the bank before executing the undertaking, and this fact of itself is inconsistent with any other view than that the bank was an accommodation obligor on the replevin undertaking. The fact that the bank's liability, which it is sought to establish, is that of a surety only, suggests the idea it is not otherwise interested in or connected with the subject of the controversy. What the bank has attempted to do, according to the record, is to execute an undertaking by which it is made answerable for the performance of a duty primarily resting on the plaintiff in the replevin action, and regarding which it is only responsible because its action was as a surety and for the accommodation of its principal in the transaction. It is true, the record does not disclose positive evidence negativing the idea that the bank had any interest in the property replevied, nor that it executed the undertaking in the furtherance of the business pertaining to its corporate aims and objects. Yet the only reasonable deduction to be drawn from the entire record is that it had no such interest.

The rights of the parties must, we think, be determined from the standpoint, as a matter of fact, of the bank being only an accommodation obligor on the instrument sued on. If in truth and in fact, the bank had such an interest in the property replevied, as to render the execution of the instrument necessary or proper in the furtherance of its corporate interests and business affairs, whether or not the plaintiffs were aware of the fact at the time, would be quite immaterial, and the obligation would be held valid as within the power of the corporation in the proper management and conduct of its business. The execution of the undertaking under such circumstances would not be an *ultra vires* act and a plea to that effect would be unavailing. But in the case at bar, in determining the liability of the defendant, we are not warranted from the record, by inference or otherwise, in saying that the execution of

the undertaking was for any such purpose or with any
other object in view than for the use and benefit of the
parties to the replevin action, in compliance with the re-
quirements of the statute and for the accommodation of
the plaintiff therein.  If we were to assume that the de-
fendants in the replevin action had actual notice, at the
time, that the bank's suretyship on the replevin under-
taking, was for the accommodation of the plaintiff, then,
we apprehend, it would not be seriously contended that
it could be bound thereby or that the cashier was author-
ized to execute such undertaking on behalf of the corpora-
tion.    Under such circumstances, no question could arise
as to the transaction being *ultra vires*, except it be on
the ground that the bank was empowered to lend its
credit to an unlimited amount by signing any sort of
obligation, concerning matters in which it had no interest
direct or remote.   That the bank is without authority or
power to engage in transactions wholly foreign to its
creation and in no wise related to the legitimate business
for which it was organized, must be accepted as true upon
the mere statement of the proposition.   It is, however,
earnestly contended by counsel for the plaintiffs that when
the property was replevied from them and the replevin
undertaking executed by the defendant bank as surety,
they had no notice, actual or constructive, that the bank
was not empowered to obligate itself on such an instru-
ment or that the cashier was without authority to bind
the bank by the transaction in regard to which he assumed
to act in its behalf, and that the plaintiffs, under the cir-
cumstances then existing, could rightfully assume that
the execution of the undertaking was by the authority of
the bank and in respect of a matter in which it might law-
fully assume the obligation entered into.   The defendants
in the replevin action, it is said, were not bound to take
notice of the want of power on the part of the corporation,
to legally bind itself by the execution of such an under-
taking.   It is further claimed that the cashier of the bank
was by the corporation held out to the public as worthy

of credit and confidence and authorized to bind the bank regarding any matter which, under any possible state of facts or circumstances, it might be legally bound in the prosecution of its corporate affairs, and that, relying on such ostensible authority and the power of the bank to make such contract, the plaintiffs changed their position to their disadvantage, and suffered the property involved in the replevin action to be taken from them on the writ of replevin and turned over to the plaintiff, Ross, who has failed to return it although a judgment for a return was rendered against him, thus leaving them without remedy save by recourse to the replevin undertaking, and that for such reasons the defendant bank is now estopped from pleading its want of power or the authority of its cashier to bind it by the execution of the replevin undertaking. The proposition contended for stated concisely amounts to this: That a person in dealing with a corporation may, without inquiry, presume the officer acting for the corporation is within the scope of his authority, if the act performed, or one similar, under any possible circumstances or surroundings, may be legally done and be binding on the corporation, regardless of the circumstances surrounding the particular transaction. If the cashier of the bank, say counsel, may execute a replevin undertaking in any suit in which the bank is not a party, under any circumstances, then the plaintiffs were warranted in presuming that he was authorized to execute the one in controversy. It may be conceded that if the execution of undertakings in court proceedings was a part of the ordinary and usual business of the bank, that it was incorporated for the purpose of furnishing such obligations when requested by litigants, and that to engage in this kind of business was in furtherance of its corporate affairs, then the plaintiffs were justified in presuming that the cashier, as one of the principal executive officers of the bank, was acting within the scope of his authority when he executed the undertaking in question. But the transaction was no part of the usual or ordinary business of the corporation. It was not

a part of the ordinary and usual business pertaining to a corporation created for the purpose of engaging in a general banking business. The act was neither within the express nor implied powers granted, as defined and limited by the corporation charter. It was no part of the duty of the cashier to execute undertakings in court proceedings for the benefit of others in litigation in which the bank was not a party nor legally interested. If, perchance, such an undertaking might have been legally executed by the corporation as incidental to its powers to do all things necessary to preserve its property and carry out the objects of its organization, because interested in the litigation, then this was a power so unusual in its character, and so infrequently exercised for the one special purpose mentioned, as to be in itself a circumstance calculated to arouse suspicion on the part of those interested, and calling for inquiry and information as to the right of the corporation to obligate itself in such an undertaking. Regarding the transaction by which the defendant bank's liability is to be determined, two litigants were engaged in a legal controversy over the right of possession of certain property, a stock of merchandise. A writ of replevin was issued and the property seized by the sheriff. Before turning over the property to the plaintiff, the officer was required by law to take and approve an undertaking with at least one sufficient surety, for the benefit of the defendants in the action. The cashier on behalf of the bank, as surety, executed the required replevin undertaking. There was nothing, so far as the record discloses to justify the defendants, who are here suing on the undertaking, in believing that the bank had any connection with the transaction or any interest in the property replevied, or was related to the suit in any other way than as surety merely on the undertaking, just as they appeared to be on the face of the instrument. Because the bank could, possibly, in a special or particular case, and under circumstances of an extraordinary character, be empowered to obligate itself by a similar contract, does not, as it seems to us,

afford sufficient grounds for a belief on the part of the defendants in that action that it was interested in the subject matter of the litigation and executed the undertaking in the furtherance of its own business. The cashier was not, as we view the situation, acting within the scope of his apparent authority. The banking corporation had not held him out to the public as authorized to do those unusual and extraordinary acts, which in a particular case it might be found proper and necessary to perform in carrying on the business for which the corporation was created. The corporation must, we think, be held to have invited the confidence of the public in its cashier regarding all those matters properly and usually belonging to the functions of such officer in the management and discharge of the principal's business, as defined by its charter, and to have invested him with authority to represent and bind the corporation by his actions in respect thereof; but those dealing with the officers of the bank could not, as we have seen, disregard and ignore the articles of incorporation, which tell of the nature of the business to be engaged in and the purposes for which incorporated. The officers can not be presumed to have greater authority than fairly implied by the charter which defines and limits the powers of the corporation itself. If the bank was not empowered to lend its credit in unlimited amounts for the accommodation of litigants on undertakings required in court proceedings, as it certainly was not, then the plaintiffs, when the replevin undertaking was given under the circumstances then existing, were in possession of no information which would warrant them in presuming that the cashier was authorized to obligate the bank by executing the instrument in its name. A party may not with impunity rely, in all cases and under all circumstances, on the authority of an officer who undertakes to obligate the corporation, even though the act may be authoritatively performed in a special and particular case. If he does so, he acts at his peril. It is only where the act done is within the authority, real or apparent, of the

officer, and under such circumstances as not to arouse suspicion as to a lack of it, nor with knowledge of facts which would put a person of ordinary prudence on inquiry which, if pursued, would disclose the true state of affairs as to the actual authority possessed by the agent in the particular transaction.

In discussing the rule invoked by the plaintiffs in error as operating as an estoppel against the bank from now asserting its want of authority, Mr. Morse in his work on Banks and Banking, sec. 735, says:

"The plea of *ultra vires* can never be set up *against* one who has acquired rights under the transaction which would be valid in law but for a *matter of fact* of which he had no reasonable notice. Two facts must coexist in reference to the person against whom the plea is urged, to bring the case within this section; first, he must be in the position of a *bona fide* holder for value, he must have parted with some property or right, or suffered some loss pecuniary, or in some way altered his position (to his disadvantage if the contract is null) in consequence of the transaction; and second, the fact by reason of which the transaction is *ultra vires* must be one which he did not know of, and could not by reasonable diligence have known, *i. e.,* one of which he had, at the time of the transaction, no notice, actual or constructive." And further on it is observed:

"Thus, for example, it is a general rule that a bank has no power to engage as surety for another in a business in which it has no interest and from which it can derive no profit. Therefore it has no right to become an accommodation indorser. If it does so, the indorsement will be utterly void in the hands of any person having notice of the fact that it was made for accommodation. But inasmuch as a bank may become an indorser for divers legal purposes, and the contract can therefore show upon its face no signs of invalidity, it will be treated as valid in the hands of a holder for value without notice of the facts." Sec. 745.

It is to be noted that in illustrating the rule, the author selects transactions peculiarly pertinent to the banking business and such as are ordinarily engaged in by the officers of a bank as a part of its general business. It seems entirely clear that where a person treats with a bank in relation to such transactions, he may properly and rightfully presume that in respect of all business of that character the bank's officers were authorized to act in its behalf, because pertaining to the usual and ordinary business for the accomplishment of which the corporation was organized, and this regardless of the actual facts and circumstances surrounding the particular transaction of· which he was ignorant. As to all such transactions, it is, we think, a sound principle in law and morals to hold that, when an officer of a banking corporation had done the very thing which, to all appearances, was a part of the charter powers and within the authority of such officer, although, because of particular facts and circumstances unknown to the other party, he had exceeded his authority and entered into a contract obligation not in the interest of the bank or in the furtherance of its business, the bank could not afterwards be heard to plead a want of authority, when such plea would result in injury to an innocent person who had dealt with the officer on the faith of his apparent authority. Suppose, however, the bank officers had undertaken to pledge the credit of the bank and obligate it to the payment of the purchase price of a large tract of land which it was not authorized to buy and under circumstances disclosing a speculative venture only, could a person seeking to take advantage of such contract successfully urge an estoppel against the bank, on the ground that it might lawfully buy such real estate as was necessary for the conduct of its business? The circumstances surrounding each of the two supposed transactions must, we think, determine the question of whether the party dealing with the corporation may safely rely on the authority of its officers lawfully to bind the corporation in respect of the contract obligation entered into.

"The principle seems to be," says the Connecticut supreme court, "that a person dealing with a corporation is bound to know whether or not the officer or agent who represents it and acts in its name is authorized so to do. If he is, and the act is within the apparent scope of his authority, he is not bound to have knowledge of extrinsic facts making it improper for him to act in that case." *Credit Co. v. Howe Machine Co.,* 54 Conn. 357. In a former decision of this court, where *ultra vires* was pleaded as a defense, the subject was considered and discussed in a case involving the authority of the president to bind the bank on a guaranty of negotiable paper, in which the bank in fact had no interest, the guaranty made by the president being solely for the accommodation of a third party and it was held that a person purchasing the paper was justified in relying on the president's representation that the paper belonged to the bank and that the bank was bound thereby, it appearing that the transaction occurred in the banking house and while the president was apparently engaged in the performance of his duties as such officer. *City Nat. Bank of Hastings v. Thomas,* 46 Neb. 861. In the case cited, it will be seen that not only did the president represent that the bank owned the notes guaranteed, and that the plaintiff in the action bought them relying on such representation and remitted the purchase money to the bank, but also that the transaction was one in its nature pertaining to the usual and ordinary business of a banking institution and, to all outward appearances, was regarding a transaction in which the bank itself was interested. There was nothing in the transaction to excite on the part of the purchaser of the paper any doubt or suspicion as to the transaction being in the interest of the bank and entered into as a part of the ordinary and usual business in which it was engaged. In *Gorder v. Plattsmouth Canning Co.,* 36 Neb. 548, cited by plaintiff's counsel, it is held by this court that the contracts of a corporation, which are not contrary to the express provisions of its charter, are pre-

sumed to be within its powers, and the burden is upon
one denying their validity to prove the facts which render
them *ultra vires*. The question was disposed of in that
case by treating the presumption spoken of as a rule of
evidence. The controversy was with respect to the amount
of indebtedness which might lawfully be incurred by the
corporation, and on this point it was held that the evi-
dence did not show that the indebtedness under the con-
tract in question exceeded the amount authorized by the
articles of incorporation. The question decided in that
case does not have a material bearing on the present one.
An exhaustive and elaborate discussion of the subject of
*ultra vires* when invoked as a defense by a corporation
seeking to disavow the acts of its officers and agents, is
found in *Miners Ditch Co. v. Zellerbach,* 37 Cal. 543. This
case is relied on with seeming assurance by the plaintiffs
in error as an authority which sustains their contention
as to the liability of the bank in the case at bar. We
have examined the opinion in the case with much interest,
and fail to find in it any substantial conflict between the
views therein expressed and those herein indicated, nor
do we regard it as affording sufficient grounds for reach-
ing a different conclusion from that announced in our
first opinion. In that case, in considering the question
of *ultra vires* in its different applications to the acts of
officers of a corporation, it is held, among other things,
that "in a contract between a corporation and strangers
dealing with it when the act in question is one which the
corporation has no power to perform under any circum-
stances, the corporation may avail itself of the defense of
*ultra vires;* but when the act may be performed by the
corporation for some purposes but not for others, the
defense of *ultra vires* may or may not be available. If the
stranger dealing with the corporation knew of its inten-
tion to perform the act for an unauthorized purpose the
defense is available, otherwise, not."

The gist of the discussion in the opinion regarding the
plea is found at page 586. In speaking of the plea which

may or may not be admissible according to the circumstances of the particular case it is observed by the court:

"But in the latter case the defense may or may not be available, depending upon the question whether the party dealing with the corporation is aware of the intention to perform the act for an unauthorized purpose, or under circumstances not justifying its performance. And the test as between strangers having no knowledge of an unlawful purpose and the corporation, is to compare the terms of the contract with the provisions of the law from which the corporation derives its powers, and if the court can see that the act to be performed is necessarily beyond the powers of the corporation for any purpose, the contract can not be enforced, otherwise it can."

With reference to the same point Mr. Justice Selden, in a well considered opinion, *Bissell v. Michigan S. and Northern I. R. Cos.,* 22 N. Y. 258, says (p. 290):

"Where the want of power is apparent, upon comparing the act done with the terms of the charter, the party dealing with the corporation is presumed to have knowlege of the defect, and the defense of *ultra vires* is available against him. But such a defense would not be permitted to prevail against a party who can not be presumed to have had any knowledge of the want of authority to make the contract. Hence, if the question of power depends not merely upon the law under which the corporation acts, but upon the existence of certain extrinsic facts, resting peculiarly within the knowledge of the corporate officers, then the corporation would, I apprehend, be estopped from denying that which, by assuming to make the contract, it had virtually affirmed."

In an early English case out of which the doctrine as at present applied by the courts has been developed (*Mayor of Norwich v. Norfolk R. Co.,* 30 Eng. L. & Eq. 120), it is said by Mr. Justice Earle:

"The doctrine was introduced at law by the East Anglian Railway Company Case, and the contract there in question, being a contract by one railway company to pay

the costs of another railway company, incurred in applying to parliament, was judicially perceived, from the terms of the contract itself, to be necessarily unconnected with the purpose of the defendants' incorporation, and, therefore, prohibited. This is the point decided in the case. * * * Looking at the report, with the remarks in the argument, I understand the court to have meant, that any application of the funds, and any contract which, in the knowledge of the party, who should sue upon the contract, was intended for a purpose unconnected with the purpose of incorporation, was prohibited; and that, where the contract itself appeared to be necessarily unconnected with the purpose of incorporation, both the parties must have known it to be so, and the court judicially perceive it to be void; and that, if the contract was not necessarily so unconnected, the ground of illegality must be averred and found in the usual way, before it could be a ground of judgment; and that no application of the funds and no contract was prohibited by implication, which the parties intended to be connected with the purpose of incorporation, however distant the connection might be. The question put in the course of the argument: 'Would a contract by a railway company for a theater or chapel be void?' exemplifies the doctrine. It would or would not, according as the purpose of the contracting parties was or was not connected with the railway. It might be a speculation separate from the railway, and prohibited. Or, if the works were wanted in a waste place, and the company found it for their interest to build a town and supply it with all requisites for inhabitancy, and, in order to secure a permanent supply of workmen of skill and responsibility, added a chapel and a theater with religious and secular instruction, it might be for the purpose of the railway, and valid, and, though distantly connected, the outlay might be found eventually to increase the profit from the traffic."

Because of the right of a railway company in the exceptional instance mentioned to buy real estate and

construct buildings for religious and secular instructions, this would be no warrant for third parties to contract with such officers for the sale of such property generally, without inquiry as to the extent of the authority possessed by such officers and the power of the corporation to obligate itself by such contracts.  In the execution of contracts in the particular and exceptional cases to which allusion has been made, officers do not act within the apparent scope of their general authority, and the contract sought to be entered into, save in a very exceptional case, is clearly and manifestly beyond the scope of the general powers of the corporation, so much so, that a party treating with its officers acts at his peril and is charged with all knowledge and notice as to lack of authority which, on the face of the transaction and under the circumstances surrounding it, may fairly and reasonably be said to be usually and ordinarily without the express or implied powers granted to the corporation.

A correct determination of the rights of the parties in the case at bar must, we think, be arrived at by an application of the rule and the reason given therefor in *Western Nat. Bank v. Armstrong,* 152 U. S. 346.  In the case cited, it is held that the borrowing of money by a bank though not illegal, is so much out of the course of ordinary and legitimate banking business as to require those making the loan to see to it that the officer or agent acting for the bank had special authority to borrow money.  This authority is commented on in the former opinion by commissioner POUND who prepared the same and we need not further speak of it here.  In principle, it is authority directly in point and commends itself as eminently sound and fully sustained by the authorities and text writers. It was, we think, equally incumbent on the defendants in the replevin action, in the case at bar, to see to it that the cashier of the bank executing the replevin undertaking did so under such circumstances as would render the obligation entered into within the scope of the powers of the bank as defined by its charter and that in failing to

do so, they must be held to have acted at their peril and to suffer the consequences arising by reason of a want of authority on the part of the cashier legally to obligate the bank by the execution of such an undertaking in its name.

If the execution of such undertakings were a part of the business of the banking corporation, if it were a part of the general duties of its cashier, if it were apparently within the general scope of his authority, although, in this particular case, the engagement was for accommodation only and in excess of the actual authority of the cashier, a different question would be presented from the one we are now here to deal with. The courts of Illinois have passed directly on the question here being considered and hold that the execution of a bond by a national bank as surety in a replevin suit is beyond its powers and void. *Bailey v. Farmers Nat. Bank,* 97 Ill. App. 66. In that action, as in the present one, property was seized by a writ of replevin, a bond executed and the property delivered to the plaintiff in replevin. Afterwards suit was instituted on the replevin bond and the defense of *ultra vires* interposed by the bank which had executed the same as surety. Because of the fact that the property had been delivered to the plaintiff in the replevin action, it was contended, as it is here, that the bank was estopped from pleading its want of power to execute the undertaking. To this it is said by the court, the rule is that the charter of a corporation, read in the light of any general laws which are applicable, is the measure of its powers, and the enumeration of those powers implies the exclusion of all others not fairly incidental; that the rule is founded on different considerations, the highest of which is in the interests of the public that the corporation shall not transcend the powers conferred upon it by law. Citing *Central Transportation Co. v. Pullman's Palace Car Co.,* 139 U. S. 24; *Best Brewing Co. v. Klassen,* 185 Ill. 37. It is further said that the statute providing for the organization and incorporation of a national bank does not expressly or impliedly give the bank, sued in the action,

authority to execute the bond sued upon, as the record shows that it was not given to aid or assist the bank in any manner in carrying on any business connected with or in furtherance of its banking business, but was executed by the bank merely as surety for the plaintiff in the replevin action. Regarding the plea of estoppel urged against the bank, because the property had been taken away from the defendant on the writ of replevin and turned over to the plaintiff, this was held unavailing because, say the court:

"Even if defendant in error had duly executed the bond sued upon in this case as surety for the shoe company, and it had been delivered and accepted by plaintiff in error on the faith of such execution, and he had incurred liabilities upon the strength of it by executing the replevin writ as therein stated, yet if defendant in error was without authority to execute the bond, it would not be liable upon it, as expressly held in *Best Brewing Co. v. Klassen, supra; Central Transportation Co. v. Pullman's Palace Car Co., supra;* and the court for that reason, therefore properly sustained the demurrer to it also."

In *Brewing Co. v. Klassen, supra,* it was held that the corporation had no implied or express power to become surety on an appeal bond to a forcible detainer suit, between third parties, where it is not shown that such act was reasonably necessary to accomplish the end for which the corporation was formed. In the opinion it is said:

"The purpose of the corporation, as expressed in its charter, is to manufacture and sell ale, beer and porter and carry on a general brewing business. It would seem no acts could be more unlike than the doing of those authorized by the charter of the company and the signing of appeal bonds as surety. The instrument was executed in a suit not by or against the corporation, but by a third person against another to recover possession of a house. *Prime facie* the signing by the company of an appeal bond in such a suit was an act beyond the purpose for which it was organized, and consequently illegal. If it had

been shown that it was executed clearly for the purpose of promoting or protecting its own business of brewing or selling beer, etc.,—that is to say, if the act had been reasonably necessary to accomplish the end for which the corporation was formed,—it would have been within the scope of the corporate power. But it can not be held that every act in furtherance of the interests of a corporation is *intra vires*. Many acts can be suggested which, though beneficial to the business of a corporation, are too remote from its general purposes to be deemed reasonably within its implied powers. What is and what is not too remote must be determined according to the facts of each case. The rule has been stated to be: In exercising powers conferred by its charter, a corporation may adopt any proper and convenient means tending directly to their accomplishment, and not amounting to the transaction of a separate, unauthorized business." *Clark v. Farrington,* 11 Wis. 321.

As illustrative of the rule and its application to different cases, by reason of the peculiar circumstances surrounding them, may be cited *Merchants' Bank v. State Bank,* 77 U. S. 604; *North River Bank v. Aymar,* 3 Hill (N. Y.), 262; *Farmers & Merchants Bank v. Butchers & Drovers' Bank,* 16 N. Y. 125; *Credit Co. v. Howe Machine Co.,* 54 Conn. 357.

Some questions having a bearing on the principal propositions advanced are called to our attention especially with reference to the relative situations of the parties, which it is maintained are worthy of consideration in the determination of their respective rights. In the main, we think these matters have been sufficiently adverted to in the former opinion. It is urged by counsel that the plea of *ultra vires* is often urged with a view of escaping from the obligations of a contract, which in justice and good morals should be executed by the corporation seeking to avail itself of the plea; that the courts are not prone to look with any special degree of favor on such a plea, and especially when the allowance of it will work injustice to

an innocent party, who has relied on the authority of the agent of the corporation to make the contract and dealt with it to his disadvantage: This on the principle that "Where one of two innocent parties must suffer by the wrongful act of a third, he who gave the power to do the wrong must bear the burden of the consequence." It is to be noted that the bank has acquired no valuable thing of advantage by the transaction from which it asks to be relieved of all legal consequences. The considerations urged are not, we think, such as to justify a judgment against the bank on the replevin undertaking because of the action of the cashier and the consequent situation in which the parties find themselves. Both parties to the transaction must, we think, be held to be in *pari delicto.* The bank had no authority to bind itself by such an undertaking, purely as a matter of accommodation, in a judicial proceeding in which it was not a party and had no interest. The cashier was not acting within the scope of his apparent or general authority. When he attempted to bind the bank by the execution of the contract he, so far as the record discloses, made no representations as to his authority to act in the bank's behalf in that regard, nor that the bank was empowered to obligate itself by such an undertaking, nor that it had any interest in the suit such as would render the act proper and *intra vires,* in order to accomplish the end for which the bank was organized. The bank's obligation on the face of the transaction was that of surety only. The defendants in the replevin action under the circumstances of the case must have known, or at least should have known, that the bank could not obligate itself on the undertaking or pledge its credit for such purpose. The interests of the public and the rights of the stockholders render it imperative that such obvious overreaching of authority by an agent of the corporation should be taken notice of by those dealing with it through such agent. The defendants in replevin, knowing, as they must have known, under the circumstances, that the cashier in attempting to obligate the

bank as surety on the undertaking was exceeding his au-
thority and transcending the powers of the corporation,
acquiesced in its acceptance as in compliance with the
law at their peril. Had they desired to avail themselves
of the manifest illegality of the act of the cashier and the
defective execution of the instrument, they should have
objected to its sufficiency as is by statute provided they
may do. By not doing so, and contenting themselves with
the acceptance of the undertaking by the officer serving
the writ, as sufficient, without objection, they must, under
the law as we interpret it, bear the consequences. They
stand in no more favorable light as to the illegality of the
action of the cashier in urging an estoppel against the
bank's right to assert want of authority, than the bank
does in invoking the doctrine of *ultra vires* as a complete
defense to the action of its cashier in attempting to bind
it by the execution of the undertaking. The judgment
heretofore rendered is, we are satisfied, right and, for the
reasons herein given as well as those stated in the former
opinion, is adhered to.

REAFFIRMED.