STATE, EX REL. CHARLES L. CRAIG, APPELLANT, V. CASPER OFFUTT ET AL., APPELLEES.

FILED APRIL 17, 1931. No. 27659.

*A. W. Jefferis* and *O. B. Clark*, for appellant.

*Brogan, Ellick & Van Dusen*, contra.

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY and PAINE, JJ.

GOSS, C. J.

This is a mandamus action by relator, claiming to be

the secretary-treasurer, to compel the secretary and the treasurer of a cemetery association to deliver over to him the property of the association held by them. From a judgment for respondents, denying a peremptory writ and quashing the alternative writ, previously issued, relator appeals.

The suit involves official control of Forest Lawn Cemetery Association. This association was organized in May, 1885, under the laws then in force and which are in substance and effect carried down to the present as section 13-501 and following sections in article V, ch. 13, Comp. St. 1929. It is a corporation not for profit, has no capital stock, and is composed of persons having rights and relations to the cemetery as provided by the by-laws duly adopted for the government of the association under the authority of the statutes.

Under this simple form of incorporation, as soon as the county clerk enters of record the true record of the meeting at which the association is organized and the first trustees are elected, "the said trustees, and their associated members, and successors, shall be invested with the powers, privileges and immunities incident to aggregate corporations." Comp. St. 1929, sec. 13-502. The trustees of the association chosen from time to time have perpetual succession. Comp. St. 1929, sec. 13-503. The association has power to prescribe the terms of membership, the number of trustees, the time and manner of their election and appointment, the time and place of meeting for trustees and association, "and to pass all other such by-laws as may be necessary for the good government of such association," not inconsistent with the statutes or Constitution. Comp. St. 1929, sec. 13-504.

The merits center around Tuesday, October 15, 1929, the date of the annual meeting provided by the by-laws. The regular notice for that meeting had been duly published. No notice of proposed amendment to the by-laws was contained therein nor otherwise given. Relator and enough of his supporters were present to outnumber and outvote respondents and their supporters and voted to

elect relator to the office of secretary-treasurer. Herbert S. Mann was the secretary, and Casper Offutt had been the treasurer, but he had, after the annual meeting and before the return and before demand had been made upon him, turned over all money and securities of the association to Howard Kennedy, his successor as treasurer.

Under the by-laws in force for many years, the management consisted of nine trustees, one to be chosen each year at the annual meeting. The by-laws gave the trustees the power to elect a secretary and treasurer and to appoint a superintendent and any other officer or agent and to define his duties and fix the compensation of these officers. The by-laws provided: "These by-laws may be altered or amended at any meeting of the association, the members thereof having been duly notified for that purpose, and three-fourths of the members present voting for said alteration or amendment." At the annual meeting, about the first thing that was done by relator and his supporters was to adopt a new set of by-laws, by the terms of which, among other changes, the secretary-treasurer was to be elected by the members at the annual meeting. After those present at the annual meeting voted to adopt these new articles, the majority of the members present voted to elect relator secretary-treasurer, and it is by virtue of this proceeding that he claims the rights asserted. Respondents take the position that the old by-laws are still in force because no notice of any change was ever given; and that the trustees in office pursuant to the former by-laws are the only ones who can elect or appoint a secretary and a treasurer. If notice was required, then the relator's election was invalid and he had no right to the offices and property he demands.

In *Rottmann v. Bartling*, 22 Neb. 375, a constitution of a church society provided for a three months' notice of any proposed change in the constitution. Without giving such notice, a meeting was called and it was attempted to change the constitution so as to allow a transfer of the church to another denomination. It was held that a change made "without giving such notice is invalid and of no ef-

fect." About the only apparent difference in that case and this, as to the notice, is that there a three months' notice was required, whereas, in the instant case, notice is required, but a definite time of notice is not set forth in the by-laws.

In *Lange v. Royal Highlanders*, 75 Neb. 188, this court said: "Another well-established principle is that a subsequent by-law providing for a forfeiture will be strictly construed most strongly against the association, and if passed in contravention of the provisions either of the articles of association, the constitution and by-laws of the society, or the statutes governing it, it will be held *ultra vires* and of no effect."

In *Deuble v. Grand Lodge, A. O. U. W.*, 72 N. Y. Supp. 755, there was involved an attempt to amend the by-laws of a mutual benefit society organized under the New York law. It was held that "An amendment to a by-law of a mutual benefit association, specifying the manner in which the by-laws shall be amended, adopted without compliance with the provisions of the by-law sought to be amended, is invalid." The court of appeals affirmed the judgment without opinion. 172 N. Y. 665.

Even where there is no provision in the by-laws for notice of an intention to make changes, and radical changes are made without reasonable notice, amendments have been held void. *Bagley v. Reno Oil Co.*, 201 Pa. St. 78.

While the by-laws required notice, yet no notice was given to thousands of members of the cemetery association, who were eligible to vote. Probably none had notice except those, fewer than 20, who appeared at the annual meeting with an elaborate set of by-laws already typed, consisting of 22 articles, radically changing the form of government of the corporation. They outvoted the half dozen or so who were conventionally present to hold the annual meeting but had no advance notice of any proposal to amend the by-laws.

This association came into existence through a very simple general statute. From this it derived its life. This

basic statute places few restrictions on such an association and does not attempt to detail the definite rules by which its affairs shall be conducted. The by-laws of such an association are to an unusual degree the rules of its life. In this instance they provide that notice of amendments shall be given. They do not provide what that notice shall be. The purpose of requiring notice is that those concerned may know, or at least have some opportunity to know, what is to be done in the way of changing the governing rules. Where no fixed time or method is stated, it seems just and fair that such method should be used in giving the notice, and it should be given for such time, as would reasonably be' calculated to impart notice or to result in notice to those interested. We are of the opinion that the by-laws were not amended, but that the proposed amendments were invalid for lack of reasonable notice. The secretary and treasurer were justified in refusing to yield to the relator.

Other and collateral subjects are discussed in the briefs, but our conclusion on the subject of notice does away with any necessity for further discussion. The judgment of the district court was right and it is

.   AFFIRMED.