THE OMAHA NATIONAL BANK, TRUSTEE, A CORPORATION, APPELLANT, V. WEST LAWN MAUSOLEUM ASSOCIATION, A CORPORATION, ET AL., APPELLEES.

63 N. W. 2d 504

Filed March 26, 1954. No. 33393.

*Fraser, Connolly, Crofoot & Wenstrand,* for appellant.

*Silverman & Silverman, Collins & Collins, Teşar & Tesar, and Richard A. O'Connor,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

The Omaha National Bank, plaintiff, as trustee of the perpetual care fund of the West Lawn Mausoleum Association, brought this action in the district court for Douglas County against the West Lawn Mausoleum Association, a corporation, Anson H. Bigelow, John W. Koutsky, Julia A. Koutsky, and Walter L. Anderson, trustee. The West Lawn Mausoleum Association entered no appearance and was adjudged to be in default. John W. Koutsky, now deceased, had only a marital interest which terminated at his death. Julia A. Koutsky claimed a reversionary interest. Anson H. Bigelow, now deceased, had one sole heir at law, Lucille Paige, who in this appeal claimed a reversionary interest. The purpose of the action was to obtain authority to sell tombs in the mausoleum under the provisions of the perpetual care fund agreement dated July 28, 1930, the funds received from the sale of the tombs to be used to repair the mausoleum and to build up an adequate perpetual care fund, to pay costs and expenses of prosecuting this suit, and to determine the rights of the defendants and to find the same, if any, to be inferior to the rights of this plaintiff.

Walter L. Anderson, the mortgage trustee, denied generally in his answer that the plaintiff's rights or the rights of the other defendants were superior to any right of the mortgage trustee; prayed that such rights be subject to the right of the mortgage trustee; and, by cross-petition, prayed for foreclosure of the mortgage trust deed dated March 1, 1937.

The district court entered a decree finding that the rights and interests of the defendants, with the exception of defendant Walter L. Anderson, trustee, were subject to the rights of plaintiff as provided for in the trust agreement; that the perpetual trust agreement should be amended to broaden the trustee's investment powers; that the rights of the defendant Walter L. Anderson, mortgage trustee, were superior to those of the plaintiff and the other defendants; that the mortgage and deed of trust dated March 1, 1937, constituted a first lien on the real estate here involved and the personal property covered by the instrument; and that this mortgage was in default.

The trial court further decreed that the defendant, West Lawn Mausoleum Association, was indebted to the defendant Walter L. Anderson, mortgage trustee, in the sum of $15,900, together with interest in the aggregate amount of $12,204.25; that the West Lawn Mausoleum Association be required to pay to such defendant $5,206 in cash in possession of the designated mausoleum association; that from this fund the defendant Walter L. Anderson, trustee as aforesaid, and his attorney should be paid reasonable compensation, and the balance of the fund paid to Walter L. Anderson, trustee, should be held by him to apply on any deficiencies that might be due the bondholders after a sale of the property; that upon default of payment for a period of 20 days from and after the entry of the decree, the mortgaged premises be sold; and that the plaintiff and defendants be foreclosed of all right, title, interest, or equity in or to the mortgaged premises.

The plaintiff filed a motion for a new trial which was overruled. From this order, the plaintiff appeals.

Walter L. Anderson, trustee for the bondholders, made application to be appointed receiver of the West Lawn Mausoleum Association property. He was appointed receiver of the property, both real and personal, and authorized to enter upon the duties of looking after and supervising the care of the mausoleum, to take charge of the mausoleum and operate it, and to report to the court the need for repairs. In addition, the West Lawn Mausoleum Association was required to turn over funds in its possession in the amount of $5,206 to the receiver. The receiver gave a bond of $4,000 and qualified.

The trustee receiver filed an application for an allowance to be paid out of funds of the West Lawn Mausoleum Association for attorney's fees and court costs in defending this appeal to the Supreme Court for the benefit of the bondholders. The trial court entered an order on the application granting the request made therein. The plaintiff moved to vacate and set aside this order. This motion to vacate and set aside the order was overruled. The plaintiff predicates error on the part of the trial court in appointing the receiver and also in awarding fees to Walter L. Anderson, mortgage trustee and receiver, and his attorney, but does not discuss or argue this assignment of error. Under rule 8a 2 (4), Revised Rules of the Supreme Court of the State of Nebraska, 1951, errors assigned but not argued will be considered as waived. See, Mason v. State, 132 Neb. 7, 270 N. W. 661; Maher v. State, 144 Neb. 463, 13 N. W. 2d 641. This assignment of error needs no further discussion.

Primarily this appeal involves the question as to whether or not the rights of the plaintiff under the perpetual care fund trust agreement are superior to the rights of receiver trustee appointed by the trial court for the benefit of the bondholders to pay the obligation

created by bonds issued and sold by the West Lawn Mausoleum Association.

The plaintiff will hereinafter be referred to as the appellant, the West Lawn Mausoleum Association as the Association, and the receiver trustee for the bondholders as the appellee.

The appellant assigns as error that the trial court erred in finding the lien of the mortgage dated March 1, 1937, was a first lien, in entering a decree of foreclosure, and in ordering the mausoleum property sold.

We set forth the substance of the stipulation of facts by the parties and other evidence adduced at the trial. The parties stipulated that the Omaha National Bank is a corporation organized under the banking laws of the United States with its principal place of business in Omaha, Nebraska; that the West Lawn Mausoleum Association is a nonprofit corporation organized under the laws of this state with its principal place of business in Omaha, Nebraska; that Walter L. Anderson is the successor trustee under a certain mortgage and trust deed dated March 1, 1937, filed of record with the register of deeds of Douglas County; and that this mortgage and trust deed were given by the West Lawn Mausoleum Association, John F. Kincaid president of the association, Anson H. Bigelow, now deceased, beneficiary under covenants contained therein, Julia A. Koutsky also beneficiary under covenants contained therein, and John W. Koutsky husband of Julia A. Koutsky, to the Conservative Securities Company for the purpose of securing payment of the principal of first mortgage bonds of the West Lawn Mausoleum Association of the face value of $35,000. This mortgage sets forth that the West Lawn Mausoleum Association is a corporation organized and existing under sections 13-601 to 13-605, Comp. St. 1929, now known as sections 12-601 through 12-605, R. S. 1943, and is now the equitable owner of the West Lawn Mausoleum situated approximately in the center of West Lawn Cemetery.

The property here involved and as set forth in the several instruments appearing in this litigation including the mortgage, may be described as follows: "A certain parcel of land in Section 5 of the Plat of West Lawn Cemetery, on file in the *officeof* said Cemetery, more fully described as follows: Commencing at a point 4 feet Northerly along the west line of Lot 48 in Section 5, thence 10 feet easterly at right angles with said line, thence North 68 degrees West 100 feet; thence Northerly at right angles 150 feet; thence Easterly and at right angles 100 feet; thence Southerly and at right angles 150 feet to the place of begining (beginning), all situate in the N 30 acres of the Southeast Quarter, Section 30, Township 15, Range 13, East, in Douglas County, Nebraska; the said point of beginning being 618.6 feet South and 1,510.1 feet East of the Northwest corner of SW¼ of the SW¼ of Section 30-15-13 E of the 6th P.M."

On July 28, 1930, Anson H. Bigelow (then the record title holder of the mausoleum property), the West Lawn Mausoleum Association, and this appellant entered into a trust agreement creating a perpetual care fund. In the trust agreement creating the perpetual care fund the West Lawn Mausoleum Association was designated as the vendee company. This trust agreement recited that the owner and the vendee company desired to set aside from the sale of tombs in the mausoleum certain sums of money to be invested in safe, interest-bearing securities and from time to time the income or interest therefrom to be paid to the vendee company or its successors. However, this money was to be used to the extent necessary to operate and keep the mausoleum building permanently and perpetually in good condition and repair. The remainder of the money was to be used for corporate purposes as the trustees of the vendee company might determine. The Omaha National Bank, as trustee, was to receive 10 percent of all the money collected by it in payment for tombs sold by the vendee company, less its charge as fiduciary. The bank was to hold said

funds as trustee for the individual owners of tombs located in the mausoleum building, and for future purchasers and owners of burial space in the building.

At the time this trust agreement with the bank was executed it was contemplated that the perpetual care fund was to be built up and increased by deposits in said fund by the West Lawn Mausoleum Association of a specified percentage of 9½ percent of the proceeds of sales of tombs. There had been paid and left in the custody of the bank as trustee since July 28, 1930, an amount of $8,317.80, which amount constituted the principal and undistributed income of the perpetual care fund.

Article IV of the perpetual care fund trust agreement provides, in substance, that the West Lawn Mausoleum Association agreed that so long as the mausoleum continued to be used as such, and as a place for burial or keeping of the dead, it would operate the same, keep it permanently in such good condition and repair as was usual with well-conducted mausoleums, and would use and apply for said purposes the income so received as far as it might be required and necessary, and to so use and apply any other funds at its disposal from any source for such purpose. If the proceeds from the perpetual care fund and funds received from the sale of tombs by the West Lawn Mausoleum Association proved insufficient to keep the mausoleum permanently in such good condition and repair as was usual in well-conducted mausoleums, or if the West Lawn Mausoleum Association was in default in maintaining the mausoleum in such condition and repair, then and in that case, upon 90 days notice given by the trustee bank, the owner, Anson H. Bigelow, and the West Lawn Mausoleum Association agreed and consented that the trustee could exercise its option and sell tombs in the mausoleum at such prices as it chose for the purpose of securing sufficient funds for the upkeep of the mausoleum.

Pursuant to the above trust agreement the plaintiff bank notified the defendants and each of them that as of

the date of service of process (which would be May 31, 1951, the date the plaintiff filed its petition), the bank proposed to exercise its option in accordance with the provisions of article IV of the trust agreement. The bank further notified the defendants and each of them, that upon confirmation of its authority to do so, on the expiration of 90 days from the service of process the bank would sell further tombs at prices which it might choose, and retain the entire proceeds of such sales, less reasonable charges and expenses, until the perpetual care fund reached an amount which in the judgment of the plaintiff bank, trustee, was sufficient to earn an annual return sufficient to provide funds necessary to properly manage, maintain, operate, and preserve the mausoleum property.

On March 1, 1937, Anson H. Bigelow, Julia A. Koutsky, and John W. Koutsky conveyed by warranty deed the real estate constituting the mausoleum property to the West Lawn Mausoleum Association. This deed was filed of record March 27, 1937, reserving from said conveyance certain tombs. The conveyance was subject to the right of the bank as trustee of the perpetual care fund for West Lawn Mausoleum Association.

On March 1, 1937, the West Lawn Mausoleum Association, Anson H. Bigelow, Julia A. Koutsky, and John W. Koutsky mortgaged the property constituting the West Lawn Mausoleum to the Conservative Securities Company as heretofore mentioned. The mortgage bonds for which this mortgage was given to secure were dated March 1, 1937, due 10 years thereafter, and issued in $500 and $100 denominations. These bonds were issued under the provisions of what is now section 12-604, R. S. 1943.

It was further stipulated that Walter L. Anderson was duly appointed as successor mortgage trustee and qualified as such.

On the date of trial 229 tombs and 15 niches or apartments had been sold, making a total of 244 units sold.

There remained to be sold space in the mausoleum of 421 tombs and 45 niches or apartments.

The president of West Lawn and Walnut Hill Cemeteries, privately owned, testified that the mausoleum property was located in the center of West Lawn Cemetery and, because of the similarity of the names and the location, the West Lawn Cemetery Association was interested in having the mausoleum repaired. The West Lawn Cemetery Association has no financial interest in the mausoleum association. He further testified that the value of the mausoleum building should be between $250,000 and $300,000; that it would require a perpetual care fund of $150,000 with a minimum of 30 percent of the proceeds of sales to go to such fund; and that under the present circumstances the mausoleum building has no particular value.

The manager of the West Lawn and Hill Crest Cemeteries testified that he had been familiar with the West Lawn Mausoleum Association since 1926. He was its superintendent and manager. He described the manner in which the mausoleum had deteriorated. He further testified that in the past 5 years he had sold 15 or 20 tombs for which he received a commission of from 5 to 10 percent, and that $15,000 would be required for emergency repairs to the building.

John F. Kincaid testified that he had been president of the West Lawn Mausoleum Association since 1933; that the association paid a 20 percent commission, 5 percent secretary's fee, and 15 percent to the Omaha National Bank, of which 10 percent went into the perpetual care fund, the other 5 percent was paid to the bank as a collection fee; that the roof of the mausoleum building leaked which caused many complaints; and that no income had been withdrawn from the perpetual care fund since Anson H. Bigelow left Omaha in 1950.

It is apparent that Anson H. Bigelow, as secretary of the West Lawn Mausoleum Association, conducted the business of the association to the exclusion of the offi-

cers or trustees up to the time that he left the city of Omaha in 1950, then the business of the association was conducted by trustees or officers up to the time that Walter L. Anderson was appointed trustee receiver.

An officer of the bank testified that there was in the perpetual care fund $179.12 in the income account, $5,938.68 in the principal cash account, and $2,200 in government bonds, making a total of $8,317.80.

There is also the evidence of a contractor who estimated the necessary cost of repairs to the mausoleum building to be approximately $40,000.

In the case of Bigelow v. Bigelow, 131 Neb. 201, 267 N. W. 409, in referring to this Association this court said: "This was a tax-free, nonprofit organization, organized under the law now found in section 13-601, to section 13-605, inclusive, Comp. St. 1929, created to manage the property."

The Association was organized under what is now section 12-601, R. S. 1943, which provides: "It shall be lawful for any number of persons not less than five, who are residents of the state of Nebraska, to form themselves into a mausoleum association, and to elect not less than three nor more than five trustees, who shall conduct the business of the association, except as may be directed by a majority of all the members of the association, at a meeting called by personal notice through the mail, where addresses of members are known, and by publication, or both, when addresses are in part unknown, at least fifteen days prior to said meeting. Said trustees shall be elected at a meeting of the members called as above provided, for a term to be fixed by the by-laws, and shall require a plurality vote of all members present. The trustees shall immediately thereafter organize by the election of the necessary officers from their own membership."

Section 12-602, R. S. 1943, provides in substance that before such organization commences business the trustees shall cause to be filed in the office of the county

clerk of the county of which the association shall have its principal place of business, a certificate showing the names of the incorporators and officers authorized to conduct its business. Upon the filing of the certificate, : the trustees and their association members and successors shall be invested with full powers. See, also, State ex rel. Craig v. Offutt, 121 Neb. 76, 236 N. W. 174.

The powers of an association organized under legislative statutes are such only as the statutes confer. Any powers with which the trustees of the association are charged by virtue of the statutes cannot be delegated to others, except under the exceptions noted in such statute, and to do so would constitute a breach of trust and be in opposition to the law under which the association is formed.

The management of a mausoleum association is to be exercised by its officers and trustees chosen in accordance with, and possessing the powers limited by, governing statutory and charter provisions. See 14 C. J. S., Cemeteries, § 10, p. 70.

The powers of a mausoleum association are limited by the statute under which it is organized and incorporated. See 10 Am. Jur., Cemeteries, § 5, p. 488.

Unless expressly authorized so to do by statute, a cemetery association or a mausoleum association cannot deprive itself of the right to select its own officers and control its own affairs. See, 14 C. J. S., Cemeteries, § 10, p. 70; In re North Forest Cemetery Assn., 19 Pa. Dist. 730; Oakland Cemetery Co. v. Peoples Cemetery Assn., 93 Tex. 569, 57 S. W. 27, 55 L. R. A. 503.

Ordinarily, the management of a cemetery association is vested in a board of trustees who are appointed or elected and act with such authority as the statutes under which the association is organized vests in them. See, Bonynge v. Frank, 89 N. J. L. 239, 98 A. 456, Ann. Cas. 1918D 211; Close v. Glenwood Cemetery, 107 U. S. 466, 2 S. Ct. 267, 27 L. Ed. 408.

The following authorities are also applicable.

The powers of a corporation organized under legislative statutes are such, and such only, as the statutes confer. The charter of a corporation is a measure of its powers, and the enumeration of these powers implies exclusion of all others. See State ex rel. Leese v. Atchison & N. R. R. Co., 24 Neb. 143, 38 N. W. 43, 8 Am. S. R. 164.

The power of a corporation to make valid contracts is measured by its charter; and the scope of the authority of its officers and agents acting for it is limited, and a person dealing with such corporation is chargeable with notice of such limitations. See Sturdevant Bros. & Co. v. Farmers & Merchants Bank, 69 Neb. 220, 95 N. W. 819.

Under section 12-509, R. S. 1943, the Association is authorized to create a perpetual care fund. This section reads as follows: "Such association shall have the power to establish a fund to be known as the 'Perpetual Care Fund,' placing therein such moneys as it may from time to time determine, out of its general funds; and it shall have the authority to receive gifts or bequests of money and other personal property, and devises of real estate and interests therein, to be placed in the perpetual care fund. The principal of the perpetual care fund shall be forever held inviolate as a perpetual trust by said association, and shall be maintained separate and distinct from any other funds. The principal of the perpetual care fund shall be invested and from time to time reinvested and kept invested in securities authorized by the laws of Nebraska for the investment of trust funds, and the income earned therefrom shall be used solely for the general care, maintenance and embellishment of the cemetery, and shall be applied in such manner as the association may from time to time determine to be for the best interest of the cemetery."

The Omaha National Bank was designated trustee of the perpetual care fund. In such capacity it had a right to maintain and manage the fund. The management of

the property of the Association remained with the officers and trustees of the Association, and their power to so manage the property of the Association could not be delegated to the bank. The power to sell crypts, tombs, lots, and apartments is a part of the power to manage, and constitutes business of the Association. This power cannot be delegated unless the statute so provides.

The appellant contends that the property of the Association is not subject to a mortgage-foreclosure sale.

In this case we are dealing with Chapter 12, article 6, Mausoleum Associations, sections 12-601 to 12-605, R. S. 1943, as distinguished from the law governing cemetery associations, except where the statutes of a cemetery association apply to mausoleum associations.

Section 12-605, R. S. 1943, provides: "Crypts, lots, tombs, niches or vaults sold by such associations or contracted therefor, shall be for the sole purpose of interment and expenses incident thereto, and shall be subject to the rules prescribed by the association. They shall be exempt from taxation, execution, attachment or any other lien or process whatever, if used or held for burial purposes only and in nowise with a view to profit."

Section 12-603, R. S. 1943, provides: "The association shall have all the powers and rights now conferred by law upon cemetery associations organized with no view to profit, and shall be governed by the provisions of law applicable to such associations, except as modified by the provisions of sections 12-601 to 12-605 or laws amendatory thereto."

It will be observed by the foregoing that crypts, lots, tombs, niches, or vaults, as specified in the statute, are not subject to taxation, execution, attachment, or any other liens or process whatever if sold or contracted for, used, or held for burial purposes. It is clear that the crypts, lots, tombs, niches, or vaults that are not sold or contracted for or held for burial purposes are not exempt under section 12-603, R. S. 1943, and the language

therein "except as modified by the provisions of sections 12-601 to 12-605 or laws amendatory thereto" clearly indicates that section 12-604, R. S. 1943, is a modification and is distinct and different from the laws governing cemetery associations. This section provides in part: "The association is empowered to issue bonds and other evidences of indebtedness; to an amount, including all indebtedness of whatever nature, not exceeding ninety per cent of the actual value of the realty of the association and improvements thereon or to be placed thereon from the proceeds thereof, not including the parts sold to individual owners, and to pledge the unsold crypts, rights or lots, and the future receipts of the association, such obligations to be paid out of the future receipts of the association." This section, read in conjunction with section 12-603, R. S. 1943, indicates that the unsold crypts, rights, or lots are subject to the payment of indebtedness as provided for in section 12-604, R. S. 1943.

It is a fundamental rule of statutory construction that the usual and ordinary meaning of words will be used in construing a statute. See State v. Chicago & N. W. Ry. Co., 147 Neb. 970, 25 N. W. 2d 824.

In interpreting the statutes here involved it is apparent that the Association was empowered to issue the bonds in question, and to pay the bonds the Association was empowered to pledge the unsold crypts, rights, or lots and the future receipts of the Association. As to the method of paying the bonds, the Association was empowered to pay such obligations out of future receipts of the Association. This clearly indicates that although a mortgage was given to secure the bonds, the Association property is not subject to sale by mortgage foreclosure. The bonds, however, are a bona fide indebtedness of the Association as set forth in section 12-604, R. S. 1943.

The parties hereto recognized at all times the statutory provisions under which the Association was formed,

and contracted with that fact in mind, and such sections of the statute become a part of such contracts, including the mortgage here involved. This being true, under section 12-604, R. S. 1943, the Association is empowered to pledge the unsold crypts, rights, or lots and the future receipts of the Association and pay this obligation out of the future receipts of the Association. The Association has no rights in this respect over and above those stated in the statute.

The duty of the trustees of the Association, after having created the debt by the issuance of bonds as provided for by section 12-604, R. S. 1943, was to pay the obligation as prescribed in said section. To hold otherwise and permit the foreclosure of the mortgage as decreed by the trial court would destroy the very purpose for which the Association was formed under sections 12-601 to 12-605, R. S. 1943, and would be against public policy. It is apparent that the trustees of the Association failed to perform their duties in this respect. The trial court obviously recognized this fact and appointed Walter L. Anderson, designated as mortgage trustee for the benefit of the bondholders, receiver, to take charge and manage the mausoleum property. Having been so appointed receiver, it is the duty of the mortgage trustee receiver for the benefit of the bondholders to pay the indebtedness of the Association evidenced by the issuance of bonds and the mortgage given to the Conservative Securities Company as security in accordance with and as specifically provided for in section 12-604, R. S. 1943.

For the reasons given herein, the decree of the trial court should be vacated and set aside insofar as it conflicts with this opinion, and the trial court is directed to modify its decree to conform to this opinion.

The total amount of the indebtedness will have to be computed by the trial court so that a proper judgment may be entered.

The judgment of the trial court is affirmed in part,

reversed in part, and the cause is remanded with directions to enter judgment in conformity with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.