## HOWARD CHURCHILL v. GEORGE M. WHITE.

FILED FEBRUARY 23, 1899. No. 8754.

1. **Infants: Liability for Torts.** An infant who hires a team and buggy for a specified journey, and drives to another place and in a different direction, takes upon himself all the consequences following therefrom. If the team is injured or the buggy is broken while being so driven, he is liable in damages for the tort, and his infancy is no protection to him.

2. **Evidence: Admissions.** Admissions or statements made by a party to a suit against interest upon a material matter may be proved without laying the foundation required in impeaching a disinterested witness.

3. ————: **Review.** To obtain a review of the rulings of the trial court on the admission of evidence the particular rulings assailed must be specifically assigned in the petition in error.

ERROR from the district court of Clay county. Tried below before HASTINGS, J. *Affirmed.*

*Thomas H. Matters,* for plaintiff in error.

*William M. Clark, contra.*

NORVAL, J.

This was an action by George M. White against Howard Churchill to recover damages to plaintiff's buggy, alleged to have been caused by the wrongful act of the defendant. From a judgment for $60 entered on a verdict for plaintiff the defendant has prosecuted this error proceeding.

The first assignment of error challenges the sufficiency of the petition filed in the court below, and upon which the cause was tried. Plaintiff for a cause of action alleges, in substance and effect, that plaintiff is engaged in the livery business at Clay Center, furnishing horses, harness, buggies, etc., for hire to those who may desire the same; that the defendant is a minor of the age of nineteen years, residing with his father near the town; that

on October 23, 1894, defendant hired from plaintiff a livery rig, consisting of a span of horses, a set of harness, and a two-seated covered buggy, to go four or five miles immediately south of Clay Center to a dance at the residence of one A. R. Baker, and agreed to and did pay plaintiff as use for said team, harness, and buggy the sum of $1.50; that defendant, after obtaining possession of said rig, drove the same to the town of Harvard, situate two and one-half miles west and six and one-half miles north of Clay Center, thence, after obtaining or receiving other passengers, he drove to said Baker's residence, where he remained a few minutes and drove the rig with five passengers directly west two and three-fourths miles, thence north eleven and one-half miles to Harvard, and thence to Clay Center; that the defendant, while said rig was in his possession, and being driven out of the line of the route from Clay Center to the place of the dance, and on the return trip from Baker's to the town of Harvard, permitted the buggy to upset, and the team to run several rods, thereby breaking the buggy in numerous places, described with great particularity in the petition, cutting and bruising the heel of one of the horses; that the team was overdriven, and that defendant drove the rig in a direction, and used the same for a purpose, different than that for which it was hired; by reason whereof plaintiff has been damaged in the sum of $100.

The contention of defendant below, plaintiff herein, is that the action is founded upon a contract with an infant, and, therefore, no recovery against him can be had. While ordinarily infants are not liable on their contracts, except for necessaries, they are answerable for their torts. In 10 Am. & Eng. Ency. Law 668, 669, the rule is stated thus: "An infant is liable for all injuries to property or person wrongfully committed by him. His privilege of infancy is given to him as a shield and not as a sword, and it cannot be used for protection against the consequences of wrongful acts; for, where civil injuries are

committed by force, the intent of the perpetrator is not regarded. * * * Although an infant is liable for his torts, he is not liable for the tortious consequences of his breach of contract. Whether the form of the action be contract or tort, the infant cannot be held for a mere violation of contract, but the contract cannot avail if the infant goes beyond the scope of it. The tort must be a distinct and substantive wrong in itself, even though it grow out of a contract, to make the infant liable. The contract must be generally put in proof to support the action, but that is because the tort, inasmuch as it is committed by departing from the terms of the contract, cannot be shown without showing the contract and not because the contract is otherwise involved." The text is abundantly sustained by judicial decisions. Although no recovery can be had against an infant for a breach of contract, the principle is well recognized, and has been often applied, that he is liable for a tort committed by him, notwithstanding it may have arisen out of, or in some way may have been connected with, a contract.

In *Fitts v. Hall*, 9 N. H. 44, Parker, C. J., observed: "The principle to be deduced from these authorities seems to be that if the tort or fraud of an infant arises from a breach of contract, although there may have been false representations or concealment respecting the subject-matter of it, the infant cannot be charged for this breach of his promise or contract, by a change of the form of action. But if the tort is subsequent to the contract, and not a mere breach of it, but a distinct, willful, and positive wrong of itself, then, although it may be connected with a contract, the infant is liable."

In *Freeman v. Boland*, 14 R. I. 39, it was held that where an infant hires a horse and buggy of a keeper of a livery stable to go to a designated place, and drives beyond the place or in another direction and injures the horse, the infant is liable therefor. To the same effect are *Homer v. Thwing*, 3 Pick. [Mass.] 492; *Rotch v. Hawes*, 12 Pick. [Mass.] 136; *Hall v. Corcoran*, 107 Mass. 251; *Fish v. Ferris*, 3 E. D. Smith [N. Y.] 565.

In *Towne v. Wiley*, 23 Vt. 355, an infant who hired a horse to drive to an agreed place twenty-three miles distant, returned by a circuitous route which nearly doubled the distance, and stopped at a house on the way, leaving the horse standing out of doors during the night without food, and it died from overdriving and exposure. It was decided that the infant was liable in damages, by reason of his having departed from the object of his bailment. Redfield, J., in delivering the unanimous opinion of the court, said: "So long as the defendant kept within the terms of the bailment, his infancy was a protection to him, whether he neglected to take proper care of the horse, or to drive him moderately. But when he departs from the object of the bailment, it amounts to a conversion of the property, and he is liable as much as if he had taken the horse in the first instance without permission. And this is no hardship; for the infant as well knows that he is perpetrating a positive and substantial wrong when he hires a horse for one purpose and puts him to another, as he does when he takes another's property by way of trespass." This case was cited by the same court, and the principle applied, in *Ray v. Tubbs*, 50 Vt. 688.

*Eaton v. Hill*, 50 N. H. 235, was an action against an infant to recover damages for having so carelessly and immoderately driven plaintiff's horse, which he had hired, as to cause the animal's death. The plea was infancy. Bellows, C. J., in passing upon the question, employed the language following: "We think, then, that the doctrine is well established, that an infant bailee of a horse is liable for any positive and willful tort done to the animal distinct from a mere breach of contract, as by driving to a place other than the one for which he is hired, refusing to return him on d 'r and after the time has expired, willfully beating him to death, and the like; so if he willfully and intentionally drive him at such an immoderate speed as to seriously endanger his life, knowing that it will do so.  *  *  *  In all these cases it may be urged that the law implies a promise, on the part of the

bailee, to drive the horse only to the appointed place, to return him at the end of the journey, not to abuse him or drive him immoderately, and that a failure in either respect is merely a breach of contract. So it might be said that the law would raise a promise not to kill him; and yet no one would fail to see that to kill him willfully would be a positive act of trespass, for which an infant should be liable the same as if there were no contract. * * * When the infant stipulates for ordinary skill and care in the use of the thing bailed, but fails from want of skill and experience, and not from any wrongful intent, it is in accordance with the policy of the law that his privilege, based upon his want of capacity to make and fully understand such contracts, should shield him. * * * But when, on the other hand, the infant wholly departs from his character of bailee, and by some positive act willfully destroys or injures the thing bailed, the act is in its nature essentially a tort, the same as if there had been no bailment, even if assumpsit might be maintained in case of an adult, on a promise to return the thing safely." In the case in hand the petition discloses, and the evidence adduced by plaintiff on the trial tends strongly to establish, that the tort of the defendant was not committed under the contract, but by absolutely abandoning or disregarding it, or in departing from the terms thereof. The petition is not framed upon the theory of a breach of contract, but for the tort, and contains sufficient averments to constitute a cause of action, notwithstanding the infancy of the defendant.

The seventh instruction is criticised, which reads as follows: "You are instructed, gentlemen, that, so far as this case is concerned, the infancy of the defendant does not affect the liability. The rule that one who hires property of this kind for one purpose and uses it for another or different purpose from that contemplated by the parties in the contract of hiring is liable for any harm that may happen it while he is so using it, applies to minors as well as to adults." This instruction harmonizes with

the views which we have already expressed and is within the doctrine announced in the cases cited above. This portion of the charge did not withdraw from the consideration of the jury whether or not the defendant used the team and buggy for a purpose different from that contemplated by the contract of hiring. Such question was fairly submitted to the jury by other instructions, which expressly advised the jury there could be no recovery if the defendant did not hire the property for a specific and designated trip, or route of travel, or to drive to a specific place. Under the theory of neither party was the infancy of the defendant material, or an important consideration, since it could not influence the decision either way. If the team was hired to drive to Mr. Baker's, as plaintiff insisted was the agreement of the parties, then it was driven nearly fifty miles, instead of ten miles, the distance from Clay Center to Baker's and return by the usual route of travel.

It is insisted that error was committed in admitting the testimony of J. M. Lyons, George Nye, Robert Stewart, Thomas Stewart, George M. White, and Snyder White. The defendant on the trial testified that there was no agreement when the team was hired that it was to be driven from Clay Center to Baker's to a dance. The testimony of the persons named above was, to the effect, that the defendant, when a witness for himself before H. C. Palmer, a justice of the peace of Clay county, in a criminal prosecution against said Churchill stated he hired the team and buggy to go to Baker's four or five miles south of the place of hiring. It is urged that the testimony of said witnesses was impeaching in its character, and was improperly admitted, because no legal foundation therefor had been laid. In the case in hand the following question was propounded to the defendant on cross-examination by counsel for plaintiff: "I will ask you to state if you did not swear in the lower court, before H. C. Palmer, justice of the peace in the town of Sutton, Nebraska, on the 8th day of December, 1894, in

the case wherein the state of Nebraska was plaintiff and Howard Churchill was defendant, that you hired the team and buggy to go south of Clay Center four or five miles to Baker's to a dance." The answer made to this question was, "No, sir; I did not." It was subsequent to the propounding of said interrogatory, and the taking of the answer thereto, that the admissions or statements of the defendants were proven. It is not necessary to decide whether the foundation attempted to be laid would have been sufficient to admit impeaching testimony had Churchill been merely a disinterested witness and not a party to the present litigation, since the testimony was competent as an admission against the interest of a party to the record. It is true one of the modes of impeaching a witness is by showing that he has made statements out of court at variance with his testimony, and that the same rule may be applied to a party to the action, but it is equally well settled that the admissions or statements of a litigant against interest, made out of court or upon a former trial relating to a material matter, may be proved without laying the foundation required in impeaching a disinterested witness. (*Bartlett v. Cheese-brough*, 32 Neb. 341; *German Nat. Bank of Hastings v. Leonard*, 40 Neb. 678.) There is no error in admitting the testimony to which objection has been interposed.

In the brief of defendant below complaint is made of the receipt as evidence of plaintiff's Exhibit 1 and testimony offered by the same party relative to the measure of damages "found on pages 6, 7, 16, 26, 36, 38, 50, 56, and 59 of the bill of exceptions." The second assignment of the petition in error states: "The court erred in admitting all evidence on the part of the plaintiff over the objection of the defendant, to which exceptions were there and then duly taken." There is no other assignment in the petition in error which in any manner attempts to present the rulings of the court on the admission of evidence, and the assignment quoted is entirely too general and indefinite to make available on review the decision of the

trial court on the admission of proofs relative to the measure of damages. This court has said that errors must be specifically assigned in the petition in error or they will be disregarded. (*Cortelyou v. Maben*, 40 Neb. 512; *Hedrick v. Strauss*, 42 Neb. 485; *Bloedel v. Zimmerman*, 41 Neb. 695; *City of Omaha v. Richards*, 49 Neb. 224.) No reversible error being disclosed, the judgment is accordingly,

AFFIRMED.