(48 App. Div. 617.)

## YOUNG v. MUHLING.

(Supreme Court, Appellate Division, Second Department. March 13, 1900.)

1. BAILMENT—CONTRACT OF HIRING—CONSTRUCTION.
   Where one hires a horse for a specified journey, a voluntary statement by him, two weeks later, on the delivery of the horse to him pursuant to the contract, that he would go by a certain route, is not a binding part of the contract.

2. SAME.
   An agreement by one hiring a team to go to a certain place to go "direct" to such place does not necessarily imply an engagement to go by the shortest way, but merely to go by some usual and expeditious route, without departing therefrom.

3. SAME—LIABILITY FOR IMMATERIAL DEPARTURE.
   One hiring a horse for a specified journey is not liable as for a tort because of slight and immaterial departures from the general course of the direction set forth in the contract.

4. INFANTS—CONTRACT OF HIRING—LIABILITY.
   A failure by an infant to observe due care of a horse hired by him, and lack of moderation in driving, will not render him liable as for a tort for damages for resulting injuries to the horse, where there was no willful and intentional injury inflicted by him.

5. BAILMENT—CONTRACT OF HIRING—MATERIAL DEPARTURE—EVIDENCE.
   In an action for injuries to a horse hired by defendant for a specified journey, evidence of an admission by him that he went to a place other than that agreed on is sufficient to show a material departure from the terms of the contract, where defendant and another positively denied the truth of the admission, and defendant explained that it was made under excitement, and there was proof on both sides that defendant went to the place specified, and spent the day there.

Appeal from trial term, Rockland county.

Action by Charles Young against Eugene Muhling to recover damages for the abuse of plaintiff's team hired to defendant. From a

judgment for plaintiff, and an order denying a new trial, defendant appeals.　Reversed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, and WOODWARD, JJ.

Charles M. Stafford, for appellant.
J. W. Sherwood, for respondent.

WILLARD BARTLETT, J.　At the time of the transactions involved in this suit the defendant was a minor.　About the middle of June, 1898, he went to the plaintiff's livery stable, at Spring Valley, in Rockland county, and ordered a team with which to go to Haverstraw on the 3d of July following.　He told the plaintiff's agent in charge of the stable that he wanted to drive to Haverstraw, and "cut a swell" there, and the agent swore that he let him the horses for that purpose.　The arrangement was that the team should be delivered at the defendant's house in the village of Monsey, on July 3, 1898, at half past 12 o'clock in the afternoon.　The team was brought to the defendant's residence at Monsey, at the time specified, by the plaintiff's agent, who then asked the defendant where he intended driving.　According to the testimony of this witness, the defendant responded:　"I am going direct to Haverstraw, put the team in, have them fed and cared for, and return home in the evening."　The witness responded:　"You need not hurry to get home.　If you are detained by your friends longer than you expect, come home at 10 o'clock, and later, if necessary; but don't injure the team."　Accompanied by a friend, the defendant drove the team to Haverstraw by way of Nanuet and the Short Clove, which is a somewhat longer route than another road which he might have taken.　The day was extremely hot, and on the way homeward in the evening one of the horses was overcome, and died from the effects of what we must assume to have been heat and overexertion.　This action is brought to recover damages against the defendant for a malicious abuse of the plaintiff's team, resulting in the death of one of the horses and injury to the other.　The complaint also alleges that the defendant drove said team not only to Haverstraw, but to divers other and more distant places in and about the county of Rockland.　The answer contains a denial of the material allegations of the complaint, except those which relate to the hiring of the team, and also sets up a plea of infancy.

Although the complaint alleges and the answer admits that the contract of hiring was entered into on or about the 2d day of July, 1898, the testimony on both sides shows that a complete agreement in respect to the letting of the team was made about two weeks earlier.　That agreement did not bind the defendant to drive to Haverstraw by the shortest route.　It left him at liberty to pursue any usually traveled road which people were accustomed to take who desired to go from Monsey to Haverstraw.　The voluntary statement on his part, when the team was brought to his residence on the 3d of July, that he proposed to go direct to Haverstraw, did not, under the circumstances, in my opinion, become a binding part of the contract

of hiring; but, if I am wrong in this, I am nevertheless of opinion that the use of the word "direct" did not necessarily imply an engagement to go by the very shortest way. It should be regarded as signifying merely the defendant's intention to proceed by some usual and expeditious route, without diverging from it. In this view it becomes immaterial whether the contract was to drive direct to Haverstraw, or merely to drive to Haverstraw. In neither aspect of the case does the evidence establish any substantial departure from the terms of the contract. The doctrine that a person who hires a horse for a specified journey is liable for conversion if he drives the horse further than the stipulated journey, or on another and different trip, cannot be pressed so far as to make the hirer chargeable as for a tort, merely by reason of slight and immaterial departures from the general course of the direction outlined in the contract. This qualification of the doctrine was recognized by the learned trial judge, who properly charged the jury that there must be a substantial and material departure from the contract of hiring in order to render his plea of infancy unavailable to the defendant.

But, in my opinion, the defendant was entitled to a dismissal at the close of the evidence on both sides, and the case should not have been submitted to the jury at all. The rule applicable to the case cannot be better stated than it is in the language of Chancellor Kent in Campbell v. Stakes, 2 Wend. 137, where he says:

"The contract of an infant is not void, but is voidable at the election of the infant. If a horse is let to him to go a journey, there is an implied promise that he will make use of ordinary care and diligence to protect the animal from injury, and return him at the time agreed upon. A bare neglect to do either would not subject him or an adult to an action of trespass, the contract remaining in full force. But, if the infant does any willful and positive act, which amounts to an election on his part to disaffirm the contract, the owner is entitled to the immediate possession. If he willfully and intentionally injures the animal, an action of trespass lies against him for the tort."

See, also, Moore v. Eastman, 1 Hun, 578, and cases there cited.

It is essential, to hold an infant for trespass in a suit like this, to show that the injury to the horse was willful and intentional. A mere lack of moderation in driving, and a failure to observe due care, where there is no willful and intentional injury, will not suffice to render an infant liable. As Chief Justice Cooley says:

"If case be brought against an infant for the immoderate use and want of care of a horse which has been bailed to him, infancy is a good defense; the gravamen of the complaint being merely a breach of the implied contract of bailment." Cooley, Torts (2d Ed.) 123.

There is no evidence in the present case sufficient to warrant a finding that the injuries which the plaintiff's team sustained were intentionally inflicted by the defendant. On the contrary, it is tolerably plain that the death of one of the horses and the sickness of the other were simply due to the fact that they were driven a long distance during the hottest portion of an exceptionally hot day in midsummer. The only testimony tending to show that there had been a material departure from the terms of the contract by driving to Nyack instead of to Haverstraw was furnished by the alleged admission of the defendant to that effect immediately after

the death of the plaintiff's horse. This admission, however, was fully explained by the defendant, who said that he was frightened and excited at the time of the accident, and might have said to the plaintiff's representative at the livery stable that he went to Nyack instead of Haverstraw, but that, if he did so, he meant New City, and not Nyack. This statement, taken in connection with his own positive denial and that of his friend, and the proof on both sides that they had been to Haverstraw, and spent the afternoon there, did not leave more than a scintilla of evidence in the case to show that the team had been driven to Nyack. Upon this record no verdict based on a finding that the defendant drove to Nyack instead of Haverstraw could be sustained for a moment. I think it is clear that whatever liability can be predicated upon the defendant's management of the plaintiff's team arises out of contract, instead of tort, and to this liability his infancy constituted a complete defense. I am therefore in favor of reversing the judgment.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.