# DAUGHERTY v. REVEAL.

[No. 8,051. Filed June 27, 1913.]

1. APPEAL.—*Record.*—*Bill of Exceptions.*—*Certificate of Shorthand Reporter.*—The certificate of the shorthand reporter is not an essential and does not determine the sufficiency of a bill of exceptions, which is a judicial act and is determined by the trial judge. p. 73.

2. APPEAL.—*Record.*—*Bill of Exceptions.*—*Filing.*—The filing of a bill of exceptions containing the evidence may be shown either by an order book entry or the certificate of the clerk. p. 74.

3. APPEAL.—*Record.*—*Certificate to Bill of Exceptions.*—Where a bill of exceptions shows that it contains all the evidence given in the cause, and is duly certified and made a part of the record by the trial judge, the failure to state in the certificate that it contains all the evidence is not a valid objection, for by signing the bill and ordering it made a part of the record the trial judge thereby adopts it as his own judicial act, and all its statements become verities on appeal. p. 74.

4. APPEAL.—*Record.*—*Bill of Exceptions.*—*Sufficiency of Certificate.*—Where, at the close of a bill of exceptions, preceding the judge's certificate, it was stated "and this was all the evidence given in said cause," and such certificate shows that within the time allowed the bill was duly signed by the judge and ordered made a part of the record, and such bill bears the file mark showing its filing on the date recited in the judge's certificate, and the clerk's certificate recites that the transcript contains "full, true and complete copies of all papers," etc., "and also the original bill of exceptions filed in the office of the clerk," etc., "and which had theretofore been filed in open court, signed and sealed by the regular judge thereof, who presided in the trial of said cause, and which bill of exceptions was then and there made a part of the record of this cause, all as required by the foregoing precipe filed herein," there was a sufficient compliance with §§657-660 Burns 1908, Acts 1897 p. 244, §629 R. S. 1881, and it appeared with sufficient certainty that the bill of exceptions signed by the judge, filed and made a part of the record, was the bill containing the typewritten manuscript of all the evidence given in the cause. p. 75.

5. INFANCY.—*Action.*—*Pleading.*—*Defense.*—*Necessity.*—The plea of infancy is a personal privilege and must be pleaded by the defendant in case the record does not disclose infancy, so that in an action of tort for damages, although the evidence showed that plaintiff knew that defendant was a minor, where the record shows that he was not represented by a guardian *ad litem*, and

that he appeared by attorney, filed answer in denial to each paragraph of complaint and participated in the trial up to the close of plaintiff's testimony, the court was not authorized to direct a verdict for defendant on his motion suggesting his infancy and the failure to appoint a guardian *ad litem.* pp. 76, 77.

6. LIVERY STABLE KEEPERS.—*Action for Wilful Injuries.—Evidence. —Directing Verdict.—*In a livery stable keeper's action for damages, where certain paragraphs of the complaint alleged either a negligent or wilful injury to a horse, and there was no evidence that any such act or omission of the defendant was the proximate cause of the injury, the court did not err in directing a verdict for defendant as to such paragraphs. p. 77.

7. INFANTS. — *Contracts.* — *Torts.* — *Liability.* — Infants are not bound by their contracts, except for necessaries, but they are liable for their torts resulting in injuries. p. 78.

8. BAILMENT.—*Care of Property.—Negligent and Wilful Acts of Bailee.—*While the law of bailment implies a duty on the part of the bailee to use ordinary care and diligence to protect the property from injury, and to return it at the time and place agreed upon, a mere neglect to perform such duty will not subject the bailee to a suit for conversion, but if he does any wilful or positive act in violation of such duty, or in repudiation of the contract, to the injury or loss of the property, the bailor is entitled to the immediate possession thereof and may have his right of action for damages for the tort so committed. p. 78.

9. LIVERY STABLE KEEPERS.—*Hiring.—Action for Conversion.—Evidence.—*In an action by a livery stable keeper for conversion, where the evidence showed that plaintiff hired a horse to defendant for the purpose of going to the home of a certain person, with the understanding that on arrival the horse was to be put in the barn and left there until ready to return, that defendant, on arriving at the destination, drove a mile and a half or two miles away, and again went driving in the afternoon, and that the horse was driven slowly and not in any way injured thereby, no sufficient deviation from the terms of the bailment was shown to entitle the plaintiff to maintain the action, especially in view of the fact that plaintiff knew that defendant was a minor and understood the purpose for which defendant intended to make the trip. p. 79.

10. BAILMENT.—*Injury to Property.—Action.—Recovery.—*While a bailor may sue in tort for damages to the property bailed, resulting from a violation of the contract, or from a negligent or wilful injury, the recovery is limited to loss or injury resulting from such violation of the contract, or to cases where the act or omission evinces an intent to convert the property and destroy or defeat the bailor's interest therein. p. 79.

11. LIVERY STABLE KEEPERS.—*Action for Conversion.—Evidence.—Directing Verdict.*—In a livery stable keeper's action for conversion where there was no evidence tending to show that the death of the horse was in any way connected with or occasioned by any use outside the strict terms of the contract of hiring, or that defendant had any intention of converting the property and depriving plaintiff thereof, the court did not err in directing a verdict for defendant. p. 81.

12. NEW TRIAL.—*Newly-Discovered Evidence.— Cumulative Evidence.*—The overruling of a motion for new trial based on the ground of newly-discovered evidence was not error, where such evidence was cumulative in character and could not cure the inherent defect in appellant's case. p. 81.

From Boone Circuit Court; *Willett H. Parr,* Judge.

Action by Lewis M. Daugherty against Clyde Reveal. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*R. P. Bundy,* for appellant.

*A. J. Shelby,* for appellee.

FELT, J.—This suit was brought by appellant against appellee to recover damages for the death of a horse and the destruction of a buggy. At the close of plaintiff's evidence the defendant moved the court to instruct the jury to find for the defendant, because: (1) the evidence wholly fails to show any liability against the defendant, and (2) the evidence shows that the defendant is a minor under the age of twenty-one years and that no guardian *ad litem* has been appointed for him. The court sustained the motion and the jury returned a verdict accordingly. Appellant moved for a new trial on the ground that the verdict is not sustained by sufficient evidence and is contrary to law; newly-discovered evidence; and error in instructing the jury to find for the defendant.

Appellee insists that the evidence is not properly in the record, because it is not shown by the certificate of either the judge, clerk or reporter to contain all the evidence given in the cause. The certificate of the shorthand reporter is not an essential and does not determine

the sufficiency of a bill of exceptions. It is a judicial act and is determined by the trial judge. *McCormick, etc., Mach. Co.* v. *Gray* (1887), 114 Ind. 340, 344, 16 N. E. 787; *Adams* v. *State* (1901), 156 Ind. 596, 603, 59 N. E. 24; *Gray* v. *Taylor* (1891), 2 Ind. App. 155, 158, 28 N. E. 220. At the close of the bill of exceptions and preceding the certificate of the trial judge it is stated: "and this was all the evidence given in said cause." Within the time allowed, the bill of exceptions was duly presented to the judge on April 22, 1911, and the same was on that day duly signed by him and ordered made a part of the record in this cause, all of which is shown by the judge's certificate, signed, sealed and attached to said bill of exceptions on the same day. The bill of exceptions bears the file mark of the clerk of the Boone Circuit Court of date, April 22, 1911. The clerk of that court on May 2, 1911, certified the transcript to contain "full, true and complete copies of all papers," etc., "and also the original bill of exceptions filed in the office of the clerk of the Boone Circuit Court on the 22nd day of April, 1911, and which had theretofore been filed in open court, signed and sealed by the regular judge thereof, who presided in the trial of said cause, and which bill of exceptions was then and there made a part of the record of this cause, all as required by the foregoing precipe filed herein." The precipe called for "the bill of exceptions filed in the office of the said clerk on the 22nd day of April, 1911," and no other bill is mentioned or shown by the record. It

2. has been held that the filing of the bill of exceptions containing the evidence may be shown either by an order book entry or the certificate of the clerk. The clerk's certificate shows the filing in this case. *Hoffman* v. *Isler* (1912), 49 Ind. App. 284, 97 N. E. 188.

Where the bill of exceptions itself shows that it contains all the evidence given in the cause and it is duly certi-

3. fied and made a part of the record by the trial judge, the failure to state in the certificate such fact is not a

valid objection, for by signing the bill and ordering it made a part of the record he thereby adopts it as his own judicial act and all its statements become verities in this court. *Mc Coy* v. *Able* (1891), 131 Ind. 417, 421, 30 N. E. 528, 31 N. E. 453; *Fisher* v. *Bush* (1892), 133 Ind. 315, 320, 32 N. E. 924; *Shea* v. *City of Muncie* (1897), 148 Ind. 14, 19, 46 N. E. 138; *Oster* v. *Broe* (1903), 161 Ind. 113, 120, 64 N. E. 918. We think there is a substantial compliance with 4. the statute and that it appears with sufficient certainty that the bill of exceptions signed by the judge, filed and made a part of the record, is the bill containing the typewritten manuscript of all the evidence given in this cause. §§657-660 Burns 1908, Acts 1897 p. 244, §629 R. S. 1881.

The first paragraph of complaint alleges in substance that the plaintiff, Daugherty, was a livery man at Zionsville, Indiana, and on June 19, 1910, hired to the defendant, Reveal, a black mare to be driven by him on that day and returned to the plaintiff; that plaintiff had demanded the return of the mare but defendant had failed to return her and had converted her to his own use to the damage of the plaintiff in the sum of $200. The second paragraph in addition to the facts alleged in the first, charges that the plaintiff hired the mare to the defendant to be driven by him to the residence of Niel Sullivan only, and placed in the barn and left there until defendant was ready to return home; that defendant agreed not to drive the mare to any other place and agreed not to leave her hitched out, but that defendant in direct violation of his contract of bailment did drive the mare to other places and did leave her hitched out to the post for a long time just previous to starting home, by reason of which violation of said contract of bailment, the mare was killed and the buggy and harness destroyed to plaintiff's damage. The third paragraph alleges the same facts as to the hiring as the second paragraph and then charges that defendant so carelessly, negligently and imprudently drove

the mare that she was thrown to the ground, her neck broken, and the buggy and harness damaged. The fourth paragraph is similar to the third except that it alleges a malicious, wanton, careless and unlawful injury to the horse and buggy of the plaintiff which caused the neck of the horse to be broken and the buggy and harness to be destroyed.

The substance of the testimony most favorable to appellant is as follows: appellant, a livery man, knew that appellee was a minor under the age of twenty-one years, and on June 18, 1910, appellee came to his livery barn and asked if he could get a horse early the next morning to drive to Niel Sullivan's; that he would put the horse in the barn at Sullivan's and leave it there until he was ready to return and asked what would be the cost of such hiring and was informed it would be $2; that about eleven o'clock p. m. of June 19, appellant was informed, over the telephone by appellee that he went to turn the mare around to start home and she fell and broke her neck; that the buggy got on a lock and he jumped out to save himself and let her go. The evidence further shows that appellee procured the mare on Sunday morning, June 19, and drove to Sullivan's; that in the forenoon, in company with the daughter of Mr. Sullivan, he drove to and from Sunday school, a mile and a half or two miles from Sullivan's residence; that between two and three o'clock in the afternoon he went out driving and returned to Mr. Sullivan's between five and six o'clock; that on return the horse was hitched in front of the house for a time and then the horse driven by appellee was again put in the barn about seven o'clock p. m.; that the horse was driven slowly, and was not in any way injured or affected by such use.

While the evidence shows that appellant knew appellee was a minor, and it is not shown that a guardian *ad litem* was appointed for him, the record shows that he

5. appeared by attorney, filed a general denial to each paragraph of the complaint and participated in the

trial up to the close of appellant's testimony when he moved for and obtained a peremptory instruction in his favor. In *Winer* v. *Mast* (1896), 146 Ind. 177, 183, 45 N. E. 66, it is said: ''It is true that infancy may be pleaded either in abatement or in bar, depending on the facts shown. In case the facts pleaded show, or do not deny a good cause of action, but merely disclose that the party is a minor and therefore cannot maintain or defend the action, then the plea, if made, would be in abatement. Doubtless, however, the court, in such case, would appoint a guardian *ad litem* for a minor defendant, and the trial would proceed; even if judgment should be entered without such appointment, the error would be but an irregularity, and the judgment, if not attacked on its merits, would stand.'' We do not think the suggestion in the motion of the minority of the defendant and the failure to appoint a guardian *ad litem* for him, authorized the court to direct a verdict in his favor. *Needham* v. *Wright* (1894), 140 Ind. 190, 39 N. E. 510; *Watson* v. *Wrightsman* (1901), 26 Ind. App. 437, 438, 59 N. E. 1064; *Evans* v. *State, ex rel.* (1877), 58 Ind. 587; *DePriest* v. *State, ex rel.* (1879), 68 Ind. 569.

There is clearly a failure of proof under the paragraphs of complaint which allege either a negligent or wilful injury to the property. There is no evidence tending to show, that any such act or omission of appellee was the proximate cause of the injury. While there may be other reasons, this is sufficient to show that the court did not err in directing a verdict as to the paragraphs charging either a negligent or a wilful injury.

The most serious question arises under the paragraphs which charge a bailment and a conversion of the property. The general rule is that the plea of infancy is a personal privilege and must be pleaded by the defendant in case the record does not disclose his infancy. *Cohee* v. *Baer* (1892), 134 Ind. 375, 377, 32 N. E. 920; *Watson* v. *Wrightsman, supra.* In this case there is no plea of in-

fancy but the evidence shows that appellee was under twenty-one years of age and that appellant knew that fact when he hired the horse to him. Infancy was also one of the reasons stated in the motion for an instruction directing a verdict for the defendant. The general rule is that infants are not bound by their contracts, except for necessaries, but are liable for their torts resulting in injuries. If liable at all, appellee must be held liable on the theory of a conversion by driving the horse beyond the destination fixed by the contract of hiring. But we do not think the decision of this case necessarily depends upon the minority of the defendant, for in our view there are reasons sufficient to justify an affirmance of the judgment independent of that fact.

Where there is a bailment the law implies a duty on the part of the bailee to use ordinary care and diligence to protect the property from injury and to return it at the time and place agreed upon. A mere neglect to perform such duty would not subject either a minor or an adult to a suit for conversion of the property. But if the bailee does any wilful and positive act in violation of such duty or in repudiation of the contract of bailment, to the injury or loss of the property, the bailor is entitled to the immediate possession thereof and may have his right of action for damages for any tort so committed. *Rice* v. *Boyer* (1886), 108 Ind. 472, 479, 9 N. E. 420; *Campbell* v. *Stakes* (1828), 2 Wend. (N. Y.) 139, 19 Am. Dec. 561; *Eaton* v. *Hill* (1870), 50 N. H. 235, 9 Am. Rep. 189, 193; *Humphrey* v. *Douglas* (1838), 33 Am. Dec. 177, notes; *Lowery* v. *Cate* (1901), 108 Tenn. 54, 64 S. W. 1068, 57 L. R. A. 673 and notes 680, 91 Am. St. 744; *Collins* v. *Gifford* (1911), 203 N. Y. 465, 96 N. E. 721, 38 L. R. A. (N. S.) 202, Ann. Cas. 1913 A 969, 974.

The facts of this case do not tend to show any intention on the part of appellee to repudiate the contract of hiring, or to wilfully and intentionally injure the horse. They

at most only show a deviation from the terms of the bailment of a character insufficient to bring the case within the rule applicable where a tort has been committed in connection with the property bailed of a character independent of and beyond the contract to such an extent as to show repudiation thereof or a negligent or wilful injury of the property. Appellee did put the horse in the barn at the place agreed upon and it was at Sullivan's residence when the accident occurred. Appellant knew appellee was a minor and understood the purpose of his visit to Mr. Sullivan's when he dealt with him. Viewed in this light, the deviation from the strict terms of the bailment was not sufficient to enable appellant to assert a liability for conversion of the property. Schouler, Bailments (3d ed.) §§139-141; 2 Kent, Comm. (12th ed.) *241; *Churchill* v. *White* (1899), 58 Neb. 22, 78 N. W. 369, 76 Am. St. 64; *Caswell* v. *Parker* (1901), 96 Me. 39, 51 Atl. 238; *Town & Co.* v. *Wiley* (1851), 23 Vt. 355, 56 Am. Dec. 85; *Gilson* v. *Spear* (1865), 38 Vt. 311, 88 Am. Dec. 659; *Lowery* v. *Cate, supra*. In *Young* v. *Muhling* (1900), 48 App. Div. 617, 619, 63 N. Y. Supp. 181, on page 183, the court said: "The doctrine that a person who hires a horse for a specified journey is liable for conversion if he drives the horse further than the stipulated journey, or on another and different trip, cannot be pressed so far as to make the hirer chargeable as for a tort, merely by reason of slight and immaterial departures from the general course of the direction outlined in the contract."

It is generally held to be the law that a bailor may sue in tort for damages to the property bailed, resulting from a violation of the contract of bailment or from a negligent or wilful injury to the same. The great weight of authority limits such recovery to loss or injury resulting from such violation of the contract, or to cases where the act or omission evinces an intent to convert the property and destroy or defeat the interest of the bailor therein. Schouler, Bailments (3d ed.) §139, states that the suit for

the tort is permitted "not, we may say, on the ground that the hirer has, in the ancient sense of the word, converted the thing let to him, but because the bailee's gross, wilful, or wanton violation of his bailor's rights makes it reasonable to treat the bailment as virtually ended." The same author in §140 states: "On the other hand, it is not difficult to conceive that technical misuse might occur without an actual abuse of the terms of hire, and where it would be harsh to visit deviation with such disastrous penalties. A conclusion is reached in one case, after a searching review of the authorities, that in a bailment for hire upon a certain term, and not merely during pleasure, the hirer's use of the property different in purpose or manner from what had been mutually intended, will not amount to a conversion justifying trover, unless the chattel's destruction was thereby occasioned, or, at least, unless the act was done with intent to convert. In truth, the leaven of common sense, which keeps our law in constant ferment, is here at work, recalling the injustice of visiting blameworthy and blameless deviation with the same penalties of absolute or insurance accountability." In *Harvey* v. *Epes* (1855), 53 Va. (12 Grat.) 153, we have a long and exhaustive discussion of the question and a review of the English and American decisions. Among other things it is said on pages 176, 178, 182. "Upon the whole, I am of opinion that in the case of a bailment upon hire for a certain term, * * * the use of the property by the hirer during the term, for a different purpose or in a different manner from that which was intended by the parties, will not amount to a conversion for which trover will lie, unless the destruction of the property be thereby occasioned; or, at least, unless the act be done with intent to convert the property and thus to destroy or defeat the interest of the bailor therein. * * * The act of misuser, to be a conversion, must occasion the loss of the property, or be done with the actual intent to convert it. A contrary

doctrine would be attended with very harsh and unjust consequences. The true rule on the subject is not, properly speaking, a general rule subject to exceptions, but is a simple rule to this effect, that if hired property be used by the hirer for a purpose or in a manner not authorized by the terms of the hiring, and the loss of the property be occasioned by such misuser, he is liable in trover for its value.'' See, also, Story, Bailments (9th ed.) §413 *et seq.* and notes; 1 Cooley, Torts (3d ed.) 184; *Davis* v. *Garrett* (1830), 6 Bing. 716, 722, 19 Eng. Com. Law 321; *Spencer* v. *Pilcher* (1837), 35 Va. (8 Leigh) 565. In *Churchill* v. *White, supra,* the Supreme Court of Nebraska approved an instruction which stated: ''The rule that one who hires property of this kind for one purpose and uses it for another or different purpose from that contemplated by the parties in the contract of hiring *is liable for any harm that may happen it while he is so using it,* applies to minors as well as to adults.'' (Our italics.)

There is no evidence in this case tending to show that the death of the horse was in any way connected with or occasioned by any use of the horse outside the strict terms 11. of the contract of hiring as given by appellant himself. Nor is there any evidence tending to show that appellee had any intention of converting the property and depriving appellant thereof. There being a failure· of evidence tending to connect the death of the horse with any violation of the terms of the bailment and to show any intention to convert the property, the court did not err in directing a verdict or in overruling appellant's motion for a new trial. The alleged newly-discovered evidence is cumulative in character tending to show a violation of the terms of the bailment, and if admitted would not cure the 12. inherent weakness of appellant's case. Substantial justice seems to have been done between the parties without error harmful to appellant. Judgment affirmed.

Adams, C. J., Hottel, P. J., Lairy, Ibach and Shea, JJ., concur.

Note.—Reported in 102 N. E. 381. See, also, under (5) 22 Cyc. 688; (6) 29 Cyc. 587; (7) 22 Cyc. 580, 618; (8) 5 Cyc. 181; (9) 25 Cyc. 1514; (10) 5 Cyc. 220; (12) 29 Cyc. 911. As to infant's power to contract, see 18 Am. St. 573. As to the liability of a bailee for misuser, see 12 Am. Dec. 619. On the question of tort of infant in the performance of a contract of bailment, see 57 L. R. A. 680; 35 L. R. A. (N. S.) 574. As to liability of hirer for driving team to place where it was not hired to go, see 26 L. R. A. 366. For liability of hirer for injury to horse while being used for a purpose other than that for which it was hired, see 28 L. R. A. (N. S.) 1106. For a discussion of the unauthorized use of a chattel by a bailee as conversion, see 3 Ann. Cas. 470; 12 Ann. Cas. 692.