Hiatt v. Tomlinson.

---

M. T. HIATT ET AL., APPELLANTS, v. HENRY W. TOMLINSON ET AL., APPELLEES.

FILED JUNE 3, 1916. No. 19339.

County Officers: REMOVAL FROM OFFICE. Actions under section 5698, Rev. St. 1913, to remove county officers from office are highly penal in their nature, and the evidence must be clear and satisfactory. The language, "for habitual or wilful neglect of duty" and "for wilful maladministration in office," involves more than oversight, carelessness or mistake. To justify removal of a county officer on such grounds, it must be clearly shown that the action of such official was prompted by some evil intent or legal malice, or at least without sufficient grounds to believe that he was properly performing his duty.

APPEAL from the district court for Holt county: ROBERT R. DICKSON, JUDGE. *Affirmed, with directions.*

*H. M. Uttley,* for appellants.

*J. A. Donohoe* and *J. J. Harrington, contra.*

FAWCETT, J.

This action was instituted by plaintiffs, as taypayers and citizens of Holt county, under the first and sixth subdivisions of section 5698, Rev. St. 1913, to remove defendants from their offices as supervisors of such county. From a judgment dismissing the action at their costs, plaintiffs appeal.

The petition contains two paragraphs. The first simply alleges that plaintiffs are taxpayers and citizens of Holt county. The second is divided into 16 subdivisions. The sixteenth subdivision has been abandoned by plaintiffs in their brief. The first, second, fourth, fifth, sixth, seventh, eighth, tenth, twelfth and fifteenth were stricken by the court. In the motion for a new trial plaintiffs do not assign any error of the court in striking out these subdivisions, and for that reason defendants had not given them any attention in their brief, although plaintiffs argue them. Defendants were justified in paying no attention to those subdivisions in this court. Plaintiffs, by failure to assign error as to them in their motion for a new trial, waived error, if any, in relation thereto. This leaves subdivisions 3, 9, 11, 13 and 14 to be considered.

The third subdivision complains of the defendants for allowing pay for clerks in the offices of the county attorney, sheriff, and county assessor, for the reason that such action was not allowed by law; that the board had not, prior to paying the salaries, found as a matter of fact that any clerks were necessary, and that no clerks were necessary in any of the said offices. The record shows that as to each of the three officers named the matter was taken up in advance by them with the board or with members of the board. In the case of the county attorney and sheriff the application for help was not made in writing; in the case of the assessor it was, but the action of the board was not specific. Here is the record: "To the Hon. Board of Supervisors. Gentlemen: I do hereby make application for sufficient help in the office of county assessor for the year 1914. T. J. Coyne, county assessor. On motion petition was granted." We think this point is settled adversely to plaintiffs' contention by *Lancaster County v. Green,* 54 Neb. 98; *Berryman v. Schalander,* 85 Neb. 281; *Gage County v. Wright,* 86 Neb. 436; and *Emberson v. Adams County,* 93 Neb. 823.

Subdivision 9 alleges that the defendants, during the years 1913 and 1914, allowed claims, and drew warrants

in payment thereof, for the building of bridges and culverts and for material furnished therefor, when the persons presenting such claims had never been employed by the board to build such bridges or furnish material therefor, and that this allegation applies to practically every claim allowed by the board and paid therefor by warrant during the two years named.

By subdivision 11 it is complained that the defendants, during the two years named, unlawfully failed and neglected to comply with chapter 111, Laws 1911, being section 2956, Rev. St. 1913. In reference to the letting of contracts for bridges, the cost of which exceeded the sum of $500, and failed to require bills for labor performed and material furnished for such bridges to be made out and filed in the manner required by statute, and failed and neglected to procure and keep records of bridges built.

Subdivision 13 complains that defendants, during the year 1914, failed, neglected and refused to make any contracts for the purchase of supplies, such as books, blanks, etc., for the county, as required by sections 1089, 1090, Rev. St. 1913.

Subdivision 14 complains that defendants did during 1914 unlawfully pay out a large amount of county money, levied and collected for the purpose of the expenses of Holt county for the year 1914, for bills filed, supplies furnished, and work and labor done during the year 1913, and prior thereto, without having included such claims or bills in the estimate of expenses made by them as required by law at the first meeting in January, 1914, among which were bills to the Western Bridge & Construction Company, amounting to $18,000, or more; bills to the Klopp-Bartlett Printing Company, amounting to $1,000, or more; bills to George A. Miles, to an amount to plaintiffs unknown; and to others whose names were unknown to plaintiffs; that all of these acts were wholly, entirely, and directly in violation of the statutes. The large amount paid to the Western Bridge & Con-

struction Company, referred to in subdivision 14, was for bridge work rendered necessary by the washing out of some bridges and damage to others, which stopped travel in some cases, and rendered it dangerous in others. The evidence we think fairly shows that the commissioners in this instance advised with the lawyers at O'Neill and also with the district judge, all of whom it is claimed, and tacitly admitted by plaintiffs, advised the commissioners to go ahead and have the work done. In none of the cases is there pointed out any fraud or fraudulent intent on the part of the commissioners. It is not claimed that in the making of any of these purchases, or in having any of the work done, the commissioners entered into fraudulent collusion with any one; nor is there evidence to show that the commissioners have ever received any money or thing of value to which they were not entitled.

Some contention is made that in certain instances *per diem* was allowed to commissioners for special work done on committees, or where certain work, such as supervision of bridge construction and road work, and like matters, was delegated by the board to some individual member of the board, and that the board met with greater frequency than was necessary. But we have been unable to find in the record evidence of fraud or evidence to show that the defendants, representing the county, ever paid out any of the county's money for which the county did not receive a fair equivalent.

That the members of the board had an erroneous idea as to the manner in which their duties should be performed, and that they did many things contrary to the method prescribed by statutes, is established by the record. Many of the things they did and some of the contracts they entered into would have been promptly enjoined by the courts if application had been made by the plaintiffs, or any other taxpayers, for such relief; but no such action was taken.

Section 5698, Rev. St. 1913, upon which the case at bar is based, reads thus: "All county officers, including justices of the peace, may be charged, tried and removed from office for official misdemeanors in the manner and for the causes following: First, for habitual or wilful neglect of duty. * * * Sixth, for wilful maladministration in office."

Section 1a, ch. 71, Comp. St. 1911, reads as follows: "Any county attorney or prosecuting officer, sheriff, police judge, mayor, police officer, or police commissioner or other officer who shall wilfully fail, neglect or refuse to enforce any law which it is made his duty to enforce shall thereby forfeit his office and may be removed therefrom."

To our mind, these two sections of the statute are equally drastic in their provisions, are each highly penal in their nature, and a construction of one would apply to the other. The latter of the two sections was under consideration in *State v. Donahue*, 91 Neb. 311. In the sixth paragraph of the syllabus we held: "Prosecutions under this statute are highly penal in their nature, and the evidence must be clear and satisfactory. To wilfully fail, neglect or refuse to enforce a law involves more than oversight or carelessness or voluntary neglect. It must be prompted by some evil intent, or legal malice, or at least be without sufficient grounds to believe that he is performing his duty." This holding is well sustained by authority. "Doing or omitting to do a thing 'knowingly and wilfully' implies not only a knowledge of the thing, but a determination with an evil intent to do it or to omit doing it." *Felton v. United States*, 96 U. S. 699.

"What is the meaning of 'wilful misconduct' as that phrase is here employed? Manifestly it is not applicable to every case of misconduct, nor to every mistake, or every departure from the strict letter of the law defining the officer's duties, but only to wilful wrongs or omissions on his part. The word 'wilful,' like most other words in our language, is of somewhat varied signification according

to its context and the nature of the subject under discussion or treatment. Frequently it is used as nearly or quite synonymous with 'voluntary' or 'intentional,' and evidently this is the interpretation given it by the trial court in the case before us. But when employed in statutes, especially in statutes of a penal character, it is held with but few exceptions to imply an evil or corrupt motive or intent." *State v. Meek,* 148 Ia. 671.

"The word 'wilfully' in the provision of the Penal Code (section 639), declaring that 'any person who wilfully or maliciously displaces, removes, injures or destroys * * * a pipe or main for conducting water or gas * * * is punishable by imprisonment,' means not simply a voluntary and intentional act, which is in fact wrongful, but one done with a wrongful purpose, with a design to injure another, or from mere wantonness or lawlessness." *Wass v. Stephens,* 128 N. Y. 123.

"For the plaintiff it is contended that the term *'wilfully,'* as here used, signifies no more than *voluntarily* or *purposely*—thus distinguishing the act of obstructing made penal, from one which may be said to have been *accidental,* which last alone it was the design of the statute not to punish. The word *'wilfully,'* as used to denote the intent with which an act is done, is undoubtedly susceptible of different shades of meaning or degrees of intensity according to the context and evident purpose of the writer. It is sometimes so modified and reduced as to mean little more than plain *intentionally,* or *designedly.* Such is not, however, its ordinary signification when used in criminal law and penal statutes. It is there most frequently understood, not in so mild a sense, but as conveying the idea of legal malice in greater or less degree, that is, as implying an evil intent without justifiable excuse." *State v. Preston,* 34 Wis. 675, 683.

"The word *'wilfully,'* in the ordinary sense in which it is used in statutes, means not merely 'voluntarily,' but with a bad purpose." *Commonwealth v. Kneeland,* 20 Pick. (Mass.) 206, 220.

Hiatt v. Tomlinson.

"We are of opinion that under the statute an official act done or omitted cannot be said to have been wilful unless the officer knew or believed that it was his official duty to do or omit the act, and with such knowledge or belief obstinately, perversely, and with intent to do wrong acted or failed to act." *State v. Alcorn,* 78 Tex. 387.

In *State v. Scates,* 43 Kan. 330, 335, an action to remove an officer, the decision concludes: "As the majority of the court do not find that any of the acts complained of were done by Scates corruptly, or with the intent to defraud the taxpayers of Seward county, judgment will be rendered in his favor and against the plaintiff."

"When proceedings under section 7459 of the Revised Statutes are brought to remove a county officer, and the court finds that such officer acted honestly in making such charges against his county, and honestly believed at the time he presented his claim for allowance, and when he collected the same, that such charges were legal, it is error to remove him from office, and enter judgment against him for the penalty provided by said section." *Ponting v. Isaman,* 7 Idaho, 581.

In *People v. Therrien,* 80 Mich. 187, 195, it is said: "The right to hold this office is just as sacred in the eyes of the law to Metevier as the right to hold the property he has earned. It is a property right, and one of which he can only be divested by a strict conformity to the statute. * * * ' The people of Mackinac county have rights also, as well as the accused. They have the right, under the Constitution, to elect their county officers, and to have such officers serve out the terms for which they were elected. It was not contemplated by the Constitution that such officers should be removed but for grave reasons."

The holding of the trial court is in harmony with the law as announced in the above cases, and is also well within our holding in *State v. Hastings,* 37 Neb. 96.

In reaching the conclusion that the judgment of the district court should be affirmed, we have not been able to shut our eyes to the fact that the defendants, in trans-

acting the business of the county, have so frequently acted contrary to the method of procedure pointed out by statute that plaintiffs are not entirely without justification in instituting the present action. We are impressed with the conviction that they also have acted in good faith.

In such a case, who should bear the costs of this litigation?

We think such costs should be taxed to the parties whose carelessness in the discharge of public duties caused the making of such costs. Such a course will prevent such carelessness on the part of the defendants in the future, and will also be a salutary admonition to the commissioners of other counties in the state to discharge their duties in accordance with the requirements of statutes enacted for their guidance.

The judgment of the district court is therefore affirmed in so far as it dismisses the action, but reversed in so far as it taxes the costs to the plaintiff, and the cause is remanded to the district court, with directions to tax all costs in the action to the defendants; defendants to also pay the costs in this court.

JUDGMENT ACCORDINGLY.

LETTON, J., not sitting

ROSE, J., dissenting.

I dissent from the decision of the majority on three fundamental grounds:

1. This is a civil action, and a preponderance of the evidence is sufficient to establish any issue in such a case. *Patrick v. Leach,* 8 Neb. 530; *Search v. Miller,* 9 Neb. 26; *Kopplekom v. Huffman,* 12 Neb. 95; *Altschuler v. Algaza,* 16 Neb. 631; *Dunbar v. Briggs,* 18 Neb. 94; *Stevens v. Carson,* 30 Neb. 544; *First Nat Bank v. Goodman,* 55 Neb. 409; *Western Mattress Co. v. Potter,* 1 Neb. (Unof.) 627; *Schmuck v. Hill,* 2 Neb. (Unof.) 79; *Link v. Campbell,* 72 Neb. 307; *Kramer v. Weigand,* 91 Neb. 47. To make "clear and satisfactory" evidence essential to a finding against

defendants in a civil suit to remove county officers for
violating statutes is to confuse terms, and to require more
than a preponderance of the evidence.

2.   Statutes authorizing the removal of county officers
for violating official duties are not "highly penal," but
are remedial in their nature, and should be liberally con-
strued to suppress mischief and advance the remedy.
*Buckmaster v. McElroy*, 20 Neb. 557, approving Sedgwick,
Construction of Statutory and Constitutional Law (2d ed.)
p. 309; 2 Wharton, Criminal Law (10th ed.) sec. 1582.

3.   The intentional violation of an official duty is suf-
ficient to justify the removal of an officer, under a statute
so declaring; evil intent or malice not being essential.
*State v. Sheldon*, 10 Neb. 452; *Highway Commissioners v.
Ely*, 54 Mich. 173; *People v. Herlihy*, 72 N. Y. Supp. 389;
*Louisville & Jeffersonville Ferry Co. v. Commonwealth*,
104 Ky. 726; *People v. Brooks*, 1 Denio (N. Y.) 457;
*Commonwealth v. Green*, 1 Ashm. (Pa.) 289; *Tracy v.
Commonwealth*, 76 S. W. (Ky.) 184; *People v. Draper*,
63 Hun (N. Y.) 389.

Adhering to these well-established principles, founded
as they are in justice and reason, I am compelled to
dissent from the opinion of the majority.