EDWARD K. CONNORS, APPELLANT, v. ANTHONY R. PANTANO, APPELLEE.

86 N. W. 2d 367

Filed November 29, 1957. No. 34252.

*Mathews, Kelley & Stone* and *Martin A. Cannon,* for appellant.

*Crawford, Garvey, Comstock & Nye,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Douglas County. It involves an action wherein Edward K. Connors seeks to recover from Anthony R. Pantano all the damage that was caused to his garage and its contents, located at 3555 Woolworth Street, in Omaha, Nebraska, by a fire. This fire, which occurred on October 13, 1955, plaintiff alleged was intentionally set by defendant's son, Ross Pantano, who was born on March 19, 1951,

and therefore at the time of the fire approximately 4 years and 7 months of age. The plaintiff's right to recovery is based on section 43-801, R. R. S. 1943.

This statute was enacted by the 1951 Legislature and provides as follows: "The parents shall be jointly and severally liable for the willful and intentional destruction of real and personal property occasioned by their minor or unemancipated children residing with them, or placed by them under the care of other persons."

The trial court dismissed the action, finding: "* * * that a child so young as the one involved herein and of whom the defendant is the parent cannot be guilty of a 'willful and intentional destruction' of property * * *." His motion for new trial having been overruled, plaintiff appealed therefrom.

The question thus presented is, can a child of approximately 4 years and 7 months of age be capable of "the willful and intentional destruction" of property within the meaning of the foregoing statute? It should be understood this action does not involve the question of a child's liability, as such, but only the question of the father's liability under the statute.

Officer Downey of the Omaha fire department arson bureau investigated the fire. It was stipulated by the parties that if he and appellee were called as witnesses they would testify to the following: "An investigation was made and three boys admitted they were in the garage playing with matches, * * *. The three boys told the following story: They were playing and decided to get some matches and go in the Connors' garage, so they went in the kitchen of the Connors' home and James Connors climbed up on the kitchen counter top, got some matches out of the cabinet and then the three boys went out in the garage and each one of them ____ said they took a piece of cardboard and lit it with a match. James Connors and Ricki Fangman said they stepped on their cardboard and put the fire out, but they said Ross Pantano stuck his cardboard which was on fire, in a

hole in the garage wall and Ross readily admitted that is what he did but said he did not mean to make such a big fire. Ross, James and Ricki said right after Ross put the cardboard that was on fire in the hole in the garage wall, Mrs. Pantano called Ross and he went home, but Mrs. Pantano saw smoke coming out of the garage so she went over to investigate and saw that the inside of the garage was on fire * * *." We have set out only that portion of what was stipulated these persons would testify to which we consider material to the question here presented.

In construing this statute we apply thereto the following principles:

"The basic rule of statutory construction is to ascertain and give effect to the intention of the Legislature as expressed in the statute." Howell v. Fletcher, 157 Neb. 196, 59 N. W. 2d 359.

"It is a fundamental rule of statutory construction that the usual and ordinary meaning of words will be used in construing a statute." Omaha Nat. Bank v. West Lawn Mausoleum Assn., 158 Neb. 412, 63 N. W. 2d 504.

"Where a statute is plain and certain in its terms, and free from ambiguity, a reading suffices, and no interpretation is needed or proper." Peetz v. Masek Auto Supply Co., 161 Neb. 588, 74 N. W. 2d 474.

It should be noted that the Legislature, when it placed this responsibility on parents which they did not have at common law, limited their liability for the destruction of real and personal property by their minor or unemancipated children to when it was willfully and intentionally done.

The word willful may have varied meanings depending upon how it is used and the subject to which it is related. See, Hiatt v. Tomlinson, 100 Neb. 51, 158 N. W. 383; Union Transfer Co. v. Bee Line Motor Freight, 150 Neb. 280, 34 N. W. 2d 363. As stated in Hiatt v. Tomlinson, *supra*: " "* * * The word "wilful," like most other words in our language, is of somewhat varied sig-

nification according to its context and the nature of the subject under discussion or treatment. * * *.' State v. Meek, 148 Ia. 671."

As here used we find it means there was an intent entering into and characterizing the act of destruction but that it would not necessarily require that it be done with an evil intent. See, Hiatt v. Tomlinson, *supra;* Bundy v. State, 114 Neb. 121, 206 N. W. 21; Union Transfer Co. v. Bee Line Motor Freight, *supra;* Sall v. State, 157 Neb. 688, 61 N. W. 2d 256; Webster's New Twentieth Century Dictionary (2d Ed.), p. 2093; Black's Law Dictionary (4th Ed.), p. 1773.

Intentional means that an act is done with design or purpose, that is, deliberately. See, Webster's New Twentieth Century Dictionary (2d Ed.), p. 955; Churchill v. White, 58 Neb. 22, 78 N. W. 369, 76 Am. S. R. 64. As stated in 46 C. J. S. under Intentional at page 1106: "Intentional act. An act directed by a person who is conscious of what he is doing, who has intelligence enough to understand the physical nature and the consequences of the act, and who does it without the compulsion of an irresistible physical force or of an irresistible insane impulse. It is necessarily a willful act, * * *."

In view of the foregoing we have come to the conclusion that a child of the tender age of 4 years and approximately 7 months is legally incapable of committing a willful and intentional act of destroying property within the purview of this statute because he has not, at that age, sufficiently attained the use of those qualities of attention, intelligence, judgment, and reason that would be necessary for him to be capable of doing such act willfully and intentionally.

A comparable line of cases of this and other courts are those dealing with contributory negligence. Although an infant is liable for his torts (Churchill v. White, *supra*), we have often held a child of tender years cannot be charged with contributory negligence

even though the latter does not require intent. See, Siedlik v. Schneider, 122 Neb. 763, 241 N. W. 535; Tews v. Bamrick, 148 Neb. 59, 26 N. W. 2d 499. And this same holding has been applied to primary negligence. See Shaske v. Hron, 266 Wis. 384, 63 N. W. 2d 706. As stated in Shaske v. Hron, *supra*: "There is an age of a child at which general experience declares him to be non sui juris, and it has been generally considered that a child under five and one-half years of age is incapable of either contributory or primary negligence." In the same opinion the court quotes from Restatement, Torts, § 283 (e), p. 743, as follows: "If he is 'so young as to be manifestly incapable of exercising any of those qualities of attention, intelligence, and judgment which are necessary to enable him to perceive a risk and to realize its unreasonable character,' he is generally held incapable of negligence."

Finding the trial court was correct in dismissing appellant's action, we affirm its judgment doing so.

AFFIRMED.