17 Neb. App. 910
TIMOTHY J. BAZAR, Appellant,
v.
DEPARTMENT OF MOTOR VEHICLES, STATE OF NEBRASKA, Appellee.
No. A-08-898.
Court of Appeals of Nebraska.
Filed September 8, 2009.
Ronald E. Reagan, of Reagan Law Offices, P.C., L.L.O., for appellant.
Jon Bruning, Attorney General, and Milissa Johnson-Wiles for appellee.
IRWIN, SIEVERS, and CASSEL, Judges.
IRWIN, Judge.

I. INTRODUCTION
Timothy J. bazar appeals an order of the district court for Lancaster County, Nebraska, dismissing his petition for declaratory judgment. bazar seeks a declaratory judgment that 247 Neb. Admin. Code, ch. 1, § 027.03 (2005) (Rule 027.03), which provides that any driver whose operator's license has been suspended for a period of 1 year pursuant to Neb. Rev. Stat. § 60-498.02 (Reissue 2004) is ineligible for an employment driving permit, is not in accord with Neb. Rev. Stat. § 60-4,129 (Reissue 2004), the version of the statute in effect at the time of Bazar's offense. We find that the district court erred in concluding that the rule was consistent with the legislative intent expressed in the statutes, and we reverse, and remand with directions.

II. BACKGROUND
The parties stipulated to the relevant facts in the district court. On November 25, 2007, Bazar's operator's license was revoked for a period of 1 year pursuant to § 60-498.02, because his license had previously been revoked within the prior 12year period. Bazar applied to the Department of Motor Vehicles (the Department) for an employment driving permit, pursuant to § 60-4,129. On November 29, the Department denied the application for an employment driving permit pursuant to Rule 027.03.
On November 29, 2007, Bazar filed a petition in the district court seeking a declaratory judgment that Rule 027.03 is not consistent with § 60-4,129 and does not properly reflect the legislative intent expressed in §§ 60-4,129 and 60-498.02. On April 16, 2008, the district court entered an order dismissing Bazar's petition. The district court concluded that there was a conflict between the two statutes, that § 60-498.02(2) was the more specific statute, and that Rule 027.03 accurately reflected the legislative intent expressed in § 60-498.02 and did not exceed the Department's statutory rulemaking authority. This appeal followed.

III. ASSIGNMENTS OF ERROR
Bazar assigns three errors on appeal challenging the district court's conclusion that the applicable statutes contradicted each other and that the Department's rule was consistent with the legislative intent expressed in the statutes.

IV. ANALYSIS
This case presents a question of statutory interpretation. The question presented to the court on appeal is whether Rule 027.03 accurately reflects the legislative intent expressed in §§ 60-4,129 and 60-498.02. We conclude that it does not.

1. Applicable Propositions of Law
[1] A declaratory judgment action is the proper judicial proceeding to determine a party's rights and obligations under a particular statute. Ameritas Life Ins. v. Balka, 257 Neb. 878, 601 N.W.2d 508 (1999). Statutory interpretation presents questions of law, and an appellate court is obligated to reach a conclusion independent of that reached by the trial court. Nelsen v. Grzywa, 9 Neb. App. 702, 618 N.W.2d 472 (2000). See Ameritas Life Ins. v. Balka, supra. In construing the meaning of the relevant statutes in this case, we apply the following well-established principles:
[2, 3] The basic rule of statutory construction is to ascertain and give effect to the intention of the Legislature as expressed in the statute. Connors v. Pantano, 165 Neb. 515, 86 N.W.2d 367 (1957). It is a fundamental rule of statutory construction that the usual and ordinary meaning of words will be used in construing a statute. Id. Where a statute is plain and certain in its terms, and free from ambiguity, a reading suffices, and no interpretation is needed or proper. Id. See, also, Ameritas Life Ins. v. Balka, supra. In considering the meaning of a statute, appellate courts will, if possible, discover the legislative intent from the language of the statute and give it effect. Ameritas Life Ins. v. Balka, supra.
[4] Appellate courts will, if possible, give effect to every word, clause, and sentence of a statute, because the Legislature is presumed to have intended every provision of a statute to have meaning. Iske v. Papio Nat. Resources Dist., 218 Neb. 39, 352 N.W.2d 172 (1984); Bohm v. DMA Partnership, 8 Neb. App. 1069, 607 N.W.2d 212 (2000). It is an elementary rule of construction that effect must be given, if possible, to every word, clause, and sentence of a statute. Ulbrick v. City of Nebraska City, 180 Neb. 229, 141 N.W.2d 849 (1966). In other words, a statute must receive such construction as will make all its parts harmonize with each other, and render them consistent with its general scope and object. Id. In the construction of a statute, no sentence, clause, or word should be rejected as meaningless or superfluous, if it can be avoided. Id.
[5, 6] In considering a statute, the legislative intention is to be determined from a general consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and the intent as deduced from the whole will prevail over that of a particular part considered separately. Behrens v. State, 140 Neb. 671, 1 N.W.2d 289 (1941). It is to be presumed that all the subsidiary provisions of an act harmonize with each other, and with the purpose of the law; if the act is intended to embrace several objects, that they do not conflict. Id. Therefore it is an elementary rule of construction that all the parts of an act relating to the same subject should be considered together, and not each by itself. Id. See, also, Premium Farms v. County of Holt, 263 Neb. 415, 640 N.W.2d 633 (2002) (court will construe statutes relating to same subject matter together so as to maintain consistent, harmonious, sensible scheme).

2. STATUTES AND RULE IN QUESTION
The foregoing propositions of law guide our ascertainment of the meaning of §§ 60-4,129 and 60-498.02 and our determination of whether Rule 027.03 is consistent with the legislative intent expressed in the statutes.
Section 60-4,129, at the time of Bazar's offense, provided in relevant part as follows:
(1) Any individual whose operator's license is revoked under section 60-498.02, 60-4,183, or 60-4,186 or suspended under section 43-3318 shall be eligible to operate any motor vehicle, except a commercial motor vehicle, in this state under an employment driving permit. An employment driving permit issued due to a revocation under section 60-498.02, 60-4,183, or 60-4,186 is valid for the period of revocation. An employment driving permit issued due to a suspension of an operator's license under section 43-3318 is valid for no more than three months and cannot be renewed.
(2) Any person whose operator's license has been suspended or revoked pursuant to any law of this state, except such sections, shall not be eligible to receive an employment driving permit during the period of such suspension or revocation.
At the time of Bazar's offense, § 60-498.02, one of the provisions specifically referenced in § 60-4,129, provided in relevant part as follows:
(1) At the expiration of thirty days after the date of arrest . . . the director shall (a) revoke the operator's license of a person arrested for refusal to submit to a chemical test . . . for a period of one year and (b) revoke the operator's license of a person who submits to a chemical test . . . which discloses the presence of [an impermissible concentration of alcohol] for a period of ninety days unless the person's driving record abstract . . . shows one or more prior administrative license revocations on which final orders have been issued during the immediately preceding twelve-year period . . . in which case the period of revocation shall be one year. . . .
(2) At the expiration of thirty days after an order of revocation is entered under subsection (1) of this section, (a) any person whose operator's license has been administratively revoked for a period of ninety days . . . may make application to the director for issuance of an employment driving permit . . . and (b) any person who. . . has his or her operator's license revoked for ninety days . . . is eligible for an order . . . to operate a motor vehicle equipped with an ignition interlock device . . . . Finally, Rule 027.03, provides as follows:
Not Available for Refusals or Subsequent Offenders. A person whose license is revoked for a period of one (1) year either (a) for refusing a test or (b) for failure of the test for a second or subsequent time shall not be eligible to apply for a work permit.

3. APPLICATION
We conclude that the intention of the Legislature, as expressed by the plain meaning of the language used in the relevant provisions and reading the provisions together to give meaning to their entirety, was that drivers whose operator's licenses have been revoked for a period of 1 year are eligible for an employment driving permit, but are not eligible for an ignition interlock device, and that drivers whose operator's licenses have been revoked for a period of 90 days are eligible for an employment driving permit after a period of 30 days, and are eligible for an ignition interlock device. This construction is consistent with the plain language actually used and gives meaning to both statutes without reading any plain language out of the statutes. As such, Rule 027.03 is not consistent with the statutory provisions.
In § 60-4,129, the Legislature clearly and unambiguously provided that "[a]ny" drivers whose operator's licenses are revoked pursuant to § 60-498.02 "shall" be eligible for an employment driving permit. As a general rule, the use of the word "shall" is considered to indicate a mandatory directive, inconsistent with the idea of discretion. See State v. Donner, 13 Neb. App. 85, 690 N.W.2d 181 (2004). The plain meaning of § 60-4,129 is that drivers whose operator's licenses have been revoked for either 90 days or 1 year under § 60-498.02 are eligible for an employment driving permit.
In § 60-498.02(1), the Legislature provided for the Department to revoke an operator's license for a period of either 90 days or 1 year. An operator's license may be revoked for a period of 1 year either because of the operator's refusal to submit to a chemical test or because of the operator's having had his license previously revoked within the prior 12-year period. The plain meaning of § 60-4,129, as noted above, indicates that a driver whose license is revoked for either period of time is eligible for an employment driving permit.
In § 60-498.02(2), the Legislature provided a specific limitation on the issuance of an employment driving permit and further addressed the eligibility for an ignition interlock device. In § 60-498.02(a), the Legislature provided that a driver whose operator's license has been revoked for a period of 90 days must wait a period of 30 days before applying for the employment driving permit referenced in § 60-4,129. In § 60-498.02(2)(b), the Legislature provided that a driver whose operator's license has been revoked for a period of 90 days is also eligible to apply for an ignition interlock device. Both subsections (2)(a) and (2)(b) of § 60-498.02 are clear and unambiguous, and there does not appear to be any dispute that the provisions provide as we have noted.
The real issue in the present case arises because, in the version of § 60-498.02(2) that was in effect at the time of Bazar's offense, the Legislature included language specifically indicating that "[t]his subsection shall not apply to nor shall any person be eligible for the benefit of this subsection during any period of time during which his or her operator's license" has been revoked for a period of 1 year pursuant to § 60-4,129. We conclude that the language is intended to apply to the entirety of § 60-498.02(2) and that, as a result, nothing in § 60-498.02(2) applies to drivers whose licenses have been revoked for a period of 1 year.
Section 60-498.02(2), by its plain and unambiguous terms, imposes a specific limitation on the right to apply for an employment driving permit that is conferred by the plain and unambiguous language of § 60-4,129. Section 60-498.02(2)(b) then provides a specific new benefit, the right to apply for an ignition interlock device, which is conferred only by this section. The final portion of § 60-498.02(2), by its plain and unambiguous terms, indicates that the subsection, including both its limitation related to the employment driving permit in § 60-498.02(2)(a) and the additional benefit of an ignition interlock device conferred in § 60-498.02(2)(b), is not applicable to drivers whose operator's licenses have been revoked for a period of 1 year.
Because § 60-498.02(2) is not applicable to drivers whose operator's licenses have been revoked for a period of 1 year, those drivers are not subject to the limitation imposed concerning application for an employment driving permit and are not awarded the benefit of an ignition interlock device. They are, however, still clearly and unambiguously within the plain language of § 60-4,129 and its grant of the right to apply for an employment driving permit. This reading is consistent with the plain meaning of the language actually used and gives meaning and effect to the entirety of both statutes. As such, we conclude that § 60-4,129 provides a general benefit to all drivers whose operator's licenses are revoked, and § 60-498.02(2) imposes a specific limitation upon a portion of those drivers and confers an additional benefit upon the same portion of those drivers, those whose operator's licenses are revoked for a period of 90 days.
The interpretation urged by the Department, and accepted by the district court, is that § 60-498.02(2) and its final provision are intended to indicate that only drivers whose licenses have been revoked for a period of 90 days are eligible to apply for an employment driving permit. Such an interpretation, however, would render meaningless the language chosen by the Legislature in § 60-4,129 that "[a]ny" drivers whose operator's licenses are revoked pursuant to § 60-498.02 "shall" be eligible for an employment driving permit; such an interpretation would suggest the Legislature actually meant that only those drivers whose operator's licenses are revoked for a period of 90 days pursuant to § 60-498.02 shall be so eligible, which is directly contrary to the plain language actually chosen. Such an interpretation directly contravenes the cardinal rules of statutory construction to give effect to the plain meaning of the language used and to give meaning to the entirety of the statutes.
We recognize the somewhat paradoxical result pointed out by the Department by this plain meaning interpretation: Drivers whose operator's licenses are revoked for only 90 days for a first offense must wait a period of 30 days before applying for an employment driving permit, while drivers whose operator's licenses are revoked for a period of 1 year either for refusal to submit to a chemical test or for multiple offenses within a 12-year period may apply for an employment driving permit immediately. Although we acknowledge that this result seems unusual, it would be a greater offense to entirely disregard the plain language chosen by the Legislature to confer the benefit of an employment permit to all drivers whose licenses have been revoked.
In addition, although it does not guide our conclusion, which is reached and supported on the basis of the plain meaning rule and desire to give meaning to the entirety of the language chosen by the Legislature, we note that the Legislature has made recent changes in the language of § 60-498.02. In 2008 Neb. Laws, L.B. 736, the Legislature made amendments to the language of § 60-498.02. See § 60-498.02 (Cum. Supp. 2008). As a result of those changes, § 60-498.02(2) no longer has a part (a) and a part (b) and no longer has the final provision discussed above. Now, § 60-498.02(2) consists solely of the language previously quoted as part (a) above, requiring the right of drivers whose operator's licenses have been revoked for a period of 90 days to wait a period of 30 days before applying for an employment driving permit. In addition, the Legislature has now provided in § 60-498.02(3) that both drivers whose operator's licenses have been revoked for a period of 90 days and drivers whose operator's licenses have been revoked for a period of 1 year because of a prior offense within the previous 12-year period are eligible to apply for an ignition interlock device. In § 60-498.02(4), the Legislature has now provided specifically that drivers whose operator's licenses have been revoked for a period of 1 year because of the operator's refusal to submit to a chemical test are not eligible to apply for either an employment driving permit or an ignition interlock device. These changes do not factor into our conclusion today, but we note that under the present version of the statute, Bazar would also be eligible to apply for an employment driving permit, without having to wait the 30-day period imposed by § 60-498.02(2). The decision of the Legislature to specify in § 60-498.02(4) that drivers whose operator's licenses have been revoked for refusing to submit to a chemical test are not eligible to apply for an employment driving permit or an ignition interlock device is, again, a clear indication that drivers whose operator's licenses have been revoked for 1 year for multiple offenses are eligible to apply for an employment driving permit; the Legislature could have easily, again, specified that only drivers whose operator's licenses have been revoked for a period of 90 days are eligible for an employment driving permit, but it chose not to.
As a result, we conclude that the district court erred in concluding that there is a conflict between §§ 60-4,129 and 60-498.02(2). There is no conflict; the former confers a general benefit on drivers whose operator's licenses have been revoked, and the latter imposes a restriction to that benefit on a portion of such drivers. Under the statutory scheme in effect at the time of Bazar's offense, the intent of the Legislature as ascertained from the plain meaning of the language used, when read to give effect to all provisions, was that drivers whose operator's licenses have been revoked for a period of 1 year were eligible to apply for an employment permit. The district court erred in concluding that the statutes denied this benefit to Bazar and that Rule 027.03 was consistent with the statutes. As such, we reverse, and remand with directions to enter an order consistent with this opinion.

V. CONCLUSION
We find that the district court erred in dismissing Bazar's petition. We reverse, and remand with directions to enter an order consistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.